**Derrick K. McATEE, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2011–SC–000259–MR.**

Supreme Court of Kentucky.

Sept. 26, 2013.

Rehearing Denied Dec. 19, 2013.

---

Bruce P. Hackett, Chief Appellate Defender, Daniel T. Goyette, Louisville, Ashley Ruth Edwards, for Appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, for Appellee.

Opinion of the Court by Justice SCOTT.

A Jefferson Circuit Court jury found Appellant, Derrick K. McAtee, guilty of murder and tampering with physical evidence. For these crimes, Appellant was sentenced to twenty-five years in prison. He now appeals as a matter of right, Ky. Const. § 110(2)(b), arguing that (1) he was entitled to a directed verdict of acquittal on the tampering charge, (2) the trial court erroneously permitted the introduction of out-of-court testimony, (3) the trial court erroneously permitted the jury to review a videotaped witness statement in the deliberation room, (4) the trial court erroneously prohibited him from introducing his entire statement to police, (5) the prosecutor's closing argument was misleading and denied him his right to a fair trial, and (6) the trial court improperly coerced a verdict from a hung jury.

For the reasons that follow, we reverse Appellant's conviction for tampering with physical evidence and vacate his sentence for that conviction, but affirm his murder conviction and corresponding sentence.

## I. BACKGROUND

On July 9, 2009, Rodney Haskins was murdered in front of Pamela Beals's Louisville home. Four days later, Detective Kevin Trees interviewed Beals over the telephone. Beals told Detective Trees that she "saw the whole thing." Beals was on her front porch with her daughter and their neighbor, Gregory Kilgore, when they witnessed an altercation between Haskins and another man. The altercation ended when the other man shot Haskins multiple times. Beals identified the shooter as "YG," a young man she knew from the neighborhood.

Detective Trees interviewed Kilgore in September 2009. Kilgore confirmed that he was standing on the porch with Beals and her daughter when the argument between "YG" and the victim began. Kilgore told the detective that when the argument escalated he left Beals's porch to return home (two houses away). As he was walking home he heard shots. Later in the interview, when asked if he could identify "YG" from a photopack identification lineup, Kilgore identified Appellant's photograph. Detective Trees then asked: "Is that the guy who shot Rodney Haskins that evening?" Kilgore admitted it was.

A Jefferson County Grand Jury indicted Appellant for murder and tampering with physical evidence. At trial, the Commonwealth called both Beals and Kilgore to testify, but both alleged to have no memory of the events in question. Beals testified that the first time she saw Haskins he was lying in front of her house. She denied all of the following: seeing Haskins in an altercation prior to the shooting, seeing him get shot, knowing Gregory Kilgore, and knowing anyone named "YG." She also denied having any recollection of speaking with Detective Trees.

Likewise, Kilgore testified at trial that he did not remember the night of the murder. Moreover, although he remembered meeting with Detective Trees in September 2009, he did not recall anything that they talked about during the interview. Nor did he remember identifying Appellant in the photopack lineup as the individual who murdered Haskins.

The trial court, however, permitted the Commonwealth to impeach Beals and Kilgore with their prior statements to Detective Trees: Beals with notes contained in Detective Trees's investigative letter and Kilgore with the transcript of his videotaped interview. Additionally, the trial court permitted the Commonwealth to introduce the videotaped recording of Kilgore's interview with Detective Trees, which was played for the jury in open court. During deliberations, the jury requested and was again permitted to review Kilgore's recorded interview in the deliberation room.

Ultimately, the jury found Appellant guilty of murder and tampering with phys-

ical evidence. However, while deliberating Appellant's sentence the jury sent the trial court a note asking: "What degree of agreement is required of the jury?" The trial court informed the parties of the inquiry and prepared a one-word memo in response: "Unanimous."

Less than an hour later, the jury sent the following note to the trial court: "We are not going to be able to come to a unanimous decision on the sentence." The court then brought the jury back to the courtroom, determined that further deliberations might be useful, and, pursuant to RCr 9.57, sent the jury back for further deliberations. Two hours later, the jury returned with a unanimous recommendation of twenty-five years' imprisonment for the murder charge and five years' imprisonment for the tampering charge, to be served concurrently. The trial court adopted the recommended sentence and this appeal followed.

Additional facts will be developed where required for our analysis.

## II. ANALYSIS
### A. Tampering with physical evidence and motion for directed verdict

 Appellant argues that he was entitled to a directed verdict of acquittal on the tampering with physical evidence charge, citing insufficient evidence to support a conviction thereon.[1] "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Common-*

---

1. This issue was properly preserved by a motion for a directed verdict at the conclusion of the Commonwealth's case-in-chief, a renewed motion for a directed verdict at the conclusion of the defense's case-in-chief, and a third motion for a directed verdict upon tendering

of proposed jury instructions objecting to the jury being instructed as to "any offense." (Appellant argued for a directed verdict of acquittal on all charges, but only appeals the denial of the motion for a directed verdict on the tampering charge.)

*wealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (citation omitted).

"A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he ... [d]estroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding...." KRS 524.100(1)(a). The Commonwealth contends that when drawing all fair and reasonable inferences in its favor, *Benham,* 816 S.W.2d at 187, it would not clearly be unreasonable for a jury to find guilt under this statute. Specifically, the Commonwealth argues that the evidence reflected that: (1) Appellant shot Haskins; (2) he either walked away or ran away from the scene; and (3) the gun was not found at the scene. It further argues that Appellant should have known that a murder would trigger an official proceeding, and alleges that the jury could therefore have reasonably inferred that Appellant removed the gun "with intent to impair its verity or availability in the official proceeding." KRS 524.100(1)(a).

In *Mullins v. Commonwealth,* this Court held that "walking away from the scene with the gun is not enough to support a tampering charge without evidence of some additional act demonstrating an intent to conceal." 350 S.W.3d 434, 442 (Ky.2011). In *Mullins,* the evidence reflected that (1) the appellant shot the victim, (2) he immediately entered a vehicle which left the scene, (3) he brought the murder weapon with him into the vehicle, and (4) no shell casings or gun were found at the murder scene. *Id.* We rejected the Commonwealth's argument that this was sufficient evidence from which a reasonable juror could have found the appellant guilty of tampering. *Id.* at 444. Instead,

we noted that when it is a murder suspect who is fleeing the murder scene with the murder weapon, "it is reasonable to infer that the primary intent ... is to get *himself* away from the scene and that carrying away evidence that is on his person is not necessarily an additional step, or an active attempt to impair the availability of evidence." *Id.* at 443. Thus, although it was reasonable to infer that the appellant in *Mullins* was holding the gun when he shot the victim, and that the appellant was "[c]learly ... attempting to flee the scene[,]" *id.,* "[t]he fact he carried the gun away from the scene with him was merely tangential to the continuation of that crime." *Id.*

Having determined that merely leaving the scene of a crime with evidence used to commit the crime was insufficient by itself to support a tampering charge, we turned our attention to whether the tampering charge was supported "where the gun was ultimately found or based on evidence of an additional act." *Id.* We first noted that "there was no evidence of an intentional act of concealment, or even of flight from the police." *Id.* at 444. Additionally, the fact that the gun was never found did not "mean it was placed in an unconventional location." *Id.* Rather, we noted that the gun could have been placed in a conventional location (e.g., the vehicle in which he was seen leaving the murder scene, his home), but that the record did not indicate that the police searched either of these places. *Id.* The police had inexplicably only searched for the murder weapon at the scene of the crime five months after the murder took place. *Id.* The gun's absence from that location at that late date was insufficient evidence to support a tampering charge. *Id.*

■ The facts of the case before us are remarkably analogous to those in *Mullins.* The Commonwealth argues that *Mullins*

"ignores very pertinent facts which supported the tampering charge in this case. The appellant did not keep the gun and wait for the police to arrive, lay the gun down for the police to find or deliver the gun to the police. The appellant either walked away or ran away with the gun." However, this is the precise argument we rejected in *Mullins*:

> If a defendant walks away from the scene in possession of evidence, this does not necessarily lead to a violation of the statute. When a crime takes place, it will almost always be the case that the perpetrator leaves the scene with evidence. If this amounted to a charge of tampering, the result would be an impermissible "piling on."

*Id.* at 443. Thus, we conclude that merely leaving the scene with the murder weapon was insufficient evidence from which a reasonable jury could fairly find Appellant guilty of tampering with physical evidence.

The second part of the analysis is whether the gun was ultimately found in a location which would support a guilty verdict or whether there is evidence of an "additional act" that would support intent to conceal (or otherwise "tamper"). We are unable to deduce any such evidence, and the Commonwealth points us to none.

There was testimony that (1) Appellant was at his girlfriend's home the night of the murder, (2) he was arrested at his girlfriend's home on September 3, 2009, and (3) the police knew Appellant's home address. However, there was no testimony that police searched for the gun at his home or his girlfriend's home (or anywhere else), or that the police discovered that the gun had been disposed of, concealed, destroyed or altered in any way. Without such evidence, it was Unreasonable for the jury to find Appellant guilty of tampering with physical evidence. *See id.* A directed verdict of acquittal should therefore have been entered on the tampering charge. *See Benham,* 816 S.W.2d at 187. Accordingly, we reverse Appellant's conviction for tampering with physical evidence, and vacate his sentence for that conviction.

## B. Introduction of Out–of–Court Testimonial Statements

■■■ Appellant next argues that the trial court erroneously permitted the Commonwealth to introduce the statements Pamela Beals and Gregory Kilgore gave to Detective Trees in 2009. Specifically, he contends that admitting unsworn, out-of-court testimonial statements as substantive evidence violates his Sixth Amendment right "to be confronted with the witnesses against him," [2] U.S. Const. amend. VI,[3] as interpreted by the U.S. Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Appellant therefore asks us to re-examine our predecessor court's decision in *Jett v. Commonwealth* which allows a witness's prior inconsistent statement to be introduced not only to impeach his credibility, but as substantive evidence. 436 S.W.2d 788 (Ky.1969).

---

**2.** This issue is preserved with respect to Kilgore's testimony. Appellant objected to the Commonwealth's introduction of Kilgore's prior statement on hearsay grounds and also argued that introducing them as substantive evidence violates the Confrontation Clause. Having determined that the issue is preserved with respect to Kilgore's testimony, we reach the merits of the issue. Therefore, we need not determine whether it was preserved with respect to Beals's testimony.

**3.** The Sixth Amendment's Confrontation Clause applies to state prosecutions through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■■ In this instance, the trial court permitted the Commonwealth to introduce Beals's and Kilgore's statements to Detective Trees under the "prior inconsistent statements" exception to the hearsay rule. *See* KRE 613; KRE 801A(a)(1). "A statement is inconsistent for purposes of KRE 801A(a)(1) whether the witness presently contradicts· or denies the prior statement, *or whether he claims to be unable to remember it.*" *Brock v. Commonwealth,* 947 S.W.2d 24, 27 (Ky.1997) (emphasis added). Under Kentucky law, prior inconsistent statements may be introduced as an impeachment device *and* as substantive evidence. · *Jett,* 436 S.W.2d at 792; KRE 801A(a)(1). Appellant contends that this rule violates the Confrontation Clause when the witness whose prior inconsistent statements are introduced testifies at trial that he or she does not remember making them. We disagree.

■ In *Crawford,* the Supreme Court held that testimonial statements of a witness who does not appear at trial are inadmissible, regardless of hearsay rules, unless he is (1) unavailable to testify and (2) his statements were previously subject to cross-examination. 541 U.S. at 53–54, 68, 124 S.Ct. 1354. Both Beals's and Kilgore's statements to Detective Trees qualify as "testimonial" statements.· *See Davis v. Washington,* 547 U.S. 813, 822, 126˙S.Ct. 2266, 165 L.Ed.2d 224 (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is·to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). Thus, the question be-

comes whether, despite his memory loss, an amnesic witness "appears at trial" to the satisfaction of the Confrontation Clause. *See McIntosh v. Commonwealth,* No. 2006–SC–000421–MR, 2008 WL 2167894, at *3–4 (Ky. May 22, 2008). We once again hold that a testifying witness alleging memory loss "appears at trial" for purposes of cross-examination, and does not implicate a Sixth Amendment violation. *Id.* at *4.

In *McIntosh,* a testifying witness, who had previously pleaded guilty to being involved in a bank robbery with the appellant, "denied having any recollection of the bank robbery whatsoever." *Id.* at *2. Pursuant to KRE 801A(a)(1), the Commonwealth, having laid the proper foundation, was permitted to admit the video recordings of the prior police interrogations where the witness had implicated the appellant. On appeal, the appellant argued that "although [the witness] was present at trial he did not truly 'appear for cross-examination' because his evasiveness rendered meaningful cross-examination impossible." *Id.* We disagreed, first noting that *Crawford* itself explains that the Confrontation Clause is not implicated when a witness appears on the witness stand and is subject to cross-examination. *See id.* To wit:

> [W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.... The Clause does not bar ad-
> ·mission of a statement so long as the declarant is present at trial to defend or explain it.

*Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354 (citation omitted).

■ Next, we noted that, in *United States v. Owens,* the U.S. Supreme Court held that a witness's memory loss does not deprive the defendant of a constitutionally

adequate opportunity for cross-examination. 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). "[T]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (internal quotation marks and some citations omitted) (*quoting Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (*quoting Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985))). "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." *Id.* Thus, *Owens* supported our conclusion that "a witness's inability or refusal to recall the events recorded in a prior statement or the events surrounding the making of the statement does not implicate the Confrontation Clause." *McIntosh,* 2008 WL 2167894, at *4.

Finally, while we noted in *McIntosh* that *Crawford* does "not discuss what it means for a witness to 'appear for cross-examination,'" 2008 WL 2167894, at *4, we acknowledged that "*Crawford* did not overrule *Owens,*[4] and several courts have held that under *Owens* a witness 'appears for cross-examination' if he willingly takes the stand, answers questions in whatever manner, and exposes his demeanor to the jury, thus giving the defense an opportunity to address the witness's prior testimonial statements," *id.* (*citing United States v. Ghilarducci,* 480 F.3d 542 (7th Cir.2007); *Connecticut v. Pierre,* 277 Conn. 42, 890

A.2d 474 (2006); *Arizona v. Real,* 214 Ariz. 232, 150 P.3d 805 (Ariz.App.2007)).

 Consistent with *McIntosh,* we hold that the Confrontation Clause is not implicated by a witness claiming memory loss if he or she takes the stand at trial and is subject to cross-examination. *See McIntosh,* 2008 WL 2167894, at *4; *Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354; *Owens,* 484 U.S. at 559, 108 S.Ct. 838. Thus, when a hearsay declarant appears on the witness stand at trial, he may be impeached with a prior inconsistent statement. Additionally, we reaffirm, as consistent with *Crawford,* the rule in *Jett* that "an out-of-court statement made by any person who appears as a witness, which statement is material and relevant to the issues of the case, may be received as substantive evidence through the testimony of another witness, and need not be limited to impeachment purposes," 436 S.W.2d at 792. *See Brown v. Commonwealth,* 313 S.W.3d 577, 623 (Ky.2010) (reaffirming *Jett* post-*Crawford* ).

As such, we conclude that the trial court committed no error in permitting the Commonwealth to introduce the statements Beals and Kilgore gave to Detective Trees.

**C. Jury's Deliberation–Room Review of Kilgore's Recorded Statement**

During its deliberations, the jury wished to review Gregory Kilgore's videotaped statement to Detective Trees and sent the trial court[5] a note with the following request: "Can we get video equipment to watch one of the videos[?]" Without contacting either party, the trial court provided the jury a DVD player. Shortly there-

---

**4.** Although *Owens* predates *Crawford* by some sixteen years, Justice Scalia authored both opinions for the Court.

**5.** The Honorable Barry Willett was presiding judge for Appellant's trial. However, when the events giving rise to this issue occurred,

Senior Judge Conliffe was temporarily sitting in place of Judge Willett. By the time the jury announced it had reached a verdict, Judge Willett had returned and was once again presiding over the proceedings.

after, however, the jury sent the court another note indicating that the DVD player would not read the disc on which Kilgore's statement was recorded. At that point, the trial court called the Commonwealth and asked it to provide a "clean" computer on which the jury could review Kilgore's recorded statement. After providing the computer, the prosecutor contacted defense counsel to inform her of the jury's request and that the Commonwealth had provided the computer on which to watch the video. The court next reconvened when the jury returned its verdict.[6]

Appellant argues that the trial court improperly communicated information to the jury in violation of RCr 9.74 when it permitted the jury to review Kilgore's videotaped statement to Detective Trees in the deliberation room. He further alleges that permitting the jury to review the videotaped statement privately violated RCr 8.28 and his Constitutional right to a public trial. In response, the Commonwealth contends that no error occurred because RCr 9.72 permitted the jury to review the recorded statement in the jury room. We hold that this was error, yet such error was harmless.

### 1. RCr 9.72

RCr 9.72 addresses evidence in the jury room and provides, in pertinent part: "Upon retiring for deliberation the jury may take all papers and other things received as evidence in the case." Although RCr 9.72 uses permissive language and invests the trial court with the discretion to send (or not send) certain items of evidence to the jury room,[7] in practice, some testimonial exhibits such as expert opinion letters or summaries, depositions, recorded witness statements, and the like may be marked and admitted for preservation purposes but not given to the jury because doing so would be akin to sending a witness back to the jury room. See *Berrier v. Bizer*, 57 S.W.3d 271, 277 (Ky. 2001). Accordingly, this "Court has carved out exceptions to [RCr 9.72]." *Tanner v. Commonwealth*, No. 2011–SC–000364–MR, 2013 WL 658123, at *9 (Ky. Feb. 21, 2013).

In *Berrier*, for example, this Court reversed an opinion of the Court of Appeals that upheld a verdict for the defendant because defense counsel had been permitted to introduce written summaries of witness interviews as exhibits. 57 S.W.3d at 276. Although our reversal in *Berrier* rested, in large part, on circumstances not present in the case at bar,[8] it

---

6. After dismissing the jury for the day, defense counsel objected to the jury's review of the video—this was the first opportunity she had to object on the record. Although the Commonwealth argues that this issue is unpreserved, we conclude that defense counsel's objection "to the way in which [the jury was] permitted to re-watch part of this testimony" was sufficiently specific to preserve this allegation of error.

7. See *Johnson v. Commonwealth*, 134 S.W.3d 563, 567 (Ky.2004) ("RCr 9.72 gave the trial court the discretion to send the letter with the jury during its deliberation.") (*citing Taylor v. Commonwealth*, 92 S.W. 292 (Ky.1906)).

8. In *Berrier*, defense counsel interviewed several witnesses, made notes during the interviews and

reduced the notes to separate typewritten "witness interview" summaries. He then furnished each witness with a copy of her "witness interview" summary for suggestions or corrections. Most of the summaries were returned with handwritten notes or corrections added. Prior to the November 1997 trial, each witness was again given a copy of her "witness interview" summary to refresh her recollection. So far, so good. However, at the conclusion of the direct examination of each witness at trial, Bizer's attorney produced that witness's "witness interview" summary, had the witness authenticate it, and, over the continu-

provides valuable guidance here because the error "was compounded when the jury was permitted to take the 'witness interview' summaries to the jury room for consideration during deliberations." *Id.* at 277. We continued:

> Generally, a jury is not permitted to take even a witness's sworn deposition to the jury room. *Young v. State Farm Mut. Auto. Ins. Co.*, Ky., 975 S.W.2d 98, 99 (1998); *Louisville, H. & St. L. Ry. Co. v. Morgan*, 110 Ky. 740, 62 S.W. 736, 737 (1901); *Thompson v. Walker*, Ky. App., 565 S.W.2d 172, 174 (1978). The primary reason for the rule is that jurors may give undue weight to testimony contained in such a deposition and not accord adequate consideration to controverting testimony received from live witnesses. 75B Am.Jur.2d, *Trial* § 1671, at 454 (1992).
>
> > [B]ecause jurors may give undue weight to the testimony contained within a deposition which they take with them and may not accord adequate consideration to controverting testimony received from live witnesses, it is the universal rule that depositions may not be reviewed by a jury on an unsupervised basis.
>
> *People v. Montoya*, 773 P.2d 623, 625 (Colo.Ct.App.1989); *see also Young v. State*, 645 So.2d 965, 966–67 (Fla.1994); *cf. Tibbs v. Tibbs*, 257 Ga. 370, 359 S.E.2d 674, 675 (1987). It is even worse to permit the jury to take with them to the jury room an unsworn statement of a witness, *e.g., State v. Poe*, 119 N.C.App. 266, 458 S.E.2d 242, 248 (1995). . . . For a similar case involving audiotapes of witness interviews, see *Mills v. Commonwealth*, Ky., 44 S.W.3d 366, 371–72 (2001).

*Berrier*, 57 S.W.3d at 277. Thus, although RCr 9.72, on its face, invests the trial court with discretion, it is error to permit the jury to take certain *testimonial* exhibits to the jury room. *See id.; see also Tanner*, 2013 WL 658123, at *9–10.

More analogous to the case before us, we recently held that a trial court erred by permitting the jury to take a sixty-second clip of a recorded interview between the appellant and a detective back to the jury room. *Tanner*, 2013 WL 658123, at *9. Although we ultimately concluded the error was harmless, we recognized "that the jury may not take 'testimonial' evidence with them to deliberations." *Id. (citing Burkhart v. Commonwealth*, 125 S.W.3d 848, 850 (Ky.2003) ("'undue emphasis' claims involve juror review of exhibits which are 'testimonial' in nature, such as a witness statement or depositions."); *Berrier*, 57 S.W.3d at 277; *Wright v. Premier Elkhorn Coal Co.*, 16 S.W.3d 570, 572 (Ky. Ct.App.1999)). We stated:

> Like a witness statement, the recorded interview between Appellant and Detective Bailey is the type of 'testimonial' statement covered by [*Burkhart, Berrier*, and *Wright* ]. The problem with this type of exhibit is that there is danger that the jury will place 'undue emphasis' on the 'testimony re-examined during deliberations, as compared to the live' evidence heard at trial, because the unreviewed testimony 'can only be conjured up by memory.' "

ing objection of Berrier's attorneys, introduced it into evidence as a marked exhibit. The jury was permitted to take these exhibits to the jury room for consideration during deliberations.
*Id.* at 276–77. We concluded that these witness interview summaries were inadmissible for multiple reasons including that: (1) they contained several prejudicial statements, written in the attorney's words, and not elicited from the witnesses at trial; and (2) even if the witnesses had written the summaries they would have been inadmissible hearsay. *See id.*

*Tanner,* 2013 WL 658123, at *9 (*quoting Burkhart,* 125 S.W.3d at 850 (*quoting Wright,* 16 S.W.3d at 572)).

 Like *Tanner,* the case before us presents a situation in which the trial court permitted the jury to take a recorded testimonial witness statement to the jury room. We once again hold that the trial court erred in doing so. To be clear: although RCr 9.72, by its terms, permits the trial court to exercise discretion over the evidence the jury may take with it to deliberations, *see Johnson,* 134 S.W.3d at 567, the court abuses that discretion when it permits the jury to take testimonial witness statements to the jury room, *see Tanner,* 2013 WL 658123, at *9; *Burkhart,* 125 S.W.3d at 850; *Berrier,* 57 S.W.3d at 277; *Wright,* 16 S.W.3d at 572. We now turn to whether this error may be deemed harmless.

The cases involving prejudicial RCr 9.72 error include "additional factors and errors, beyond the mere error in allowing the jury to take the evidence into deliberations...." *Tanner,* 2013 WL 658123, at *9. For example, in *Berrier,* this Court held that "the trial court erred because admitting the witness interview summaries was akin to allowing counsel to testify on behalf of the witnesses, and the summaries were also inadmissible hearsay evidence." *Id.* (*citing Berrier,* 57 S.W.3d at 276); *see also* footnote 8 *supra.* Those errors were "compounded" by permitting the jury to take the summaries to the jury room during deliberations. *Berrier,* 57 S.W.3d at 277. Additionally, the *Berrier* Court noted that it could not deem the error harmless because of "the prejudicial content of [counsel]'s 'witness interview' summary and the fact that similar summaries were introduced during [the appellee]'s direct examination of eight witnesses." *Id.*

Unlike *Berrier,* we noted that the at-issue statement in *Tanner* "was not an inaccurate summary prepared by counsel ..., [but] a recording that the jury properly heard during the trial. It was that additional factor, the inaccuracy, that led to prejudice in *Berrier.*" 2013 WL 658123, at *10. Here, too, *Berrier* is distinguishable because Kilgore's statement was properly admitted as a trial exhibit and cannot be characterized as "inaccurate." Rather, as in *Tanner,* "the trial court obeyed the letter of RCr 9.72, but the 'testimonial' nature of the evidence itself injected the error." *Id.* We are satisfied that the RCr 9.72 error committed in this case was harmless. That is, we can say with fair assurance that the judgment was not substantially swayed by the error. *Winstead v. Commonwealth,* 283 S.W.3d 678, 689 (Ky.2009) (establishing the "substantially swayed" standard of reviewing for harmless error when federal constitution is not implicated) (*citing Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Thus, in this instance, we find the error harmless.

 We pause here to address Justice Cunningham's separate opinion concurring in result. He misreads our opinion as "turn[ing] *Jett v. Commonwealth* on its head and, by implication, even creat[ing] confusion as to the proper use of written or videotaped confessions." This opinion does nothing of the sort; it merely holds that videotaped testimonial *witness* statements that *are* properly admitted into evidence as trial exhibits may not be reviewed in the privacy of the jury room; this must occur in the courtroom pursuant to RCr 9.74. Our opinion says nothing about the admissibility of a defendant's confession and it explicitly *reaffirms* the holding in *Jett. See* Section II.B, *supra.*

 As previously discussed, *Jett* holds that a witness' prior inconsistent statement is admissible (1) to impeach the witness and (2) as substantive evidence. *See id.*

And, as Justice Cunningham notes, under *Jett,* recorded evidence has been deemed admissible to establish the prior inconsistent statement. *See Shepherd v. Commonwealth,* 251 S.W.3d 309, 322 (Ky.2008) (audio-taped witness interview); *Porter v. Commonwealth,* 892 S.W.2d 594, 597 (Ky. 1995) (videotaped guilty plea); *Alexander v. Commonwealth,* 862 S.W.2d 856, 860–61 (Ky.1993), *overruled on other grounds by Stringer v. Commonwealth,* 956 S.W.2d 883 (Ky.1997) (written record). Today's opinion does not leave "[t]he jury ... to strive to remember what the recorded out-of-court statement said," and nor does it "impede[ ] truth and justice because it forces the jury to simply rely upon its fallible recollection," as Justice Cunningham suggests; in fact, a witness' recorded prior inconsistent statement is still admissible (provided the proper foundation is laid). Rather, today's opinion establishes that a properly admitted recording of a witness' prior inconsistent statement may not be reviewed privately by the jury during deliberations. However, if the jury wishes to review the recording it may, upon request, do so in the courtroom in the presence of all parties and the judge.

To lend guidance to the trial courts, we offer the following examples of recorded testimonial evidence that have been held impermissible to send to the jury room: depositions, *Kansas v. Wilson,* 188 Kan. 67, 360 P.2d 1092, 1098 (1961), *Missouri v. Brooks,* 675 S.W.2d 53, 57 (Mo.Ct.App. 1984); expert witness reports, *Davolt v. Highland,* 119 S.W.3d 118, 135 (Mo.Ct. App.2003); eyewitness' videotaped statement to law enforcement officers, *Lewis v. Delaware,* 21 A.3d 8, 14 (Del.2011); eye-

witness' written statement to law enforcement officers, *Montana v. Herman,* 350 Mont. 109, 204 P.3d 1254, 1260–61 (2009), *impliedly overruled on other grounds by Montana v. Ariegwe,* 338 Mont. 442, 167 P.3d 815 (2007), *Schwenke v. Wyoming,* 768 P.2d 1031, 1037 (Wyo.1989); transcript of defendant's prior trial testimony, *Barnes v. Florida,* 970 So.2d 332, 339 (Fla. 2007); transcript of expert witness' trial testimony, *New Hampshire v. Littlefield,* 152 N.H. 331, 876 A.2d 712, 724 (2005);[9] attorney's written summary of witness' trial testimony, *Hodgdon v. Frisbie Mem'l Hosp.,* 147 N.H. 286, 786 A.2d 859, 865 (2001); trial testimony presented by video recording, *Young v. Florida,* 645 So.2d 965, 967 (Fla.1994); and state agency's recorded interview of child victim, *id.; Stephens v. Wyoming,* 774 P.2d 60, 70 (Wyo. 1989), *overruled on other grounds by Large v. Wyoming,* 177 P.3d 807 (Wyo. 2008).

Today, contemporaneous with this case, we rendered *Springfield v. Commonwealth,* No. 2012–SC–000370 (Ky. Aug. 29, 2013), in which we held that an audio and video recording of an actual drug transaction is not deemed to be testimonial in nature, and, thus, properly allowed into the jury room during deliberations. To lend further guidance, we offer the following as examples of recorded evidence that has been held *not* to be testimonial in nature and therefore properly sent to the jury room: store surveillance video, *New Hampshire v. Dugas,* 147 N.H. 62, 782 A.2d 888, 896 (2001), *Mathews v. Georgia,* 258 Ga.App. 29, 572 S.E.2d 719, 721 (2002);[10] video documenting the fruits of a

**9.** Although the issue was not preserved in *Littlefield,* the Supreme Court of New Hampshire approved of the trial court's decision to deny the jury's request for a transcript of the expert's testimony, noting its testimonial nature. *Id.* On appeal, the defendant argued that the trial court should have provided the jury with the transcript.

**10.** Georgia refers to the prohibition against permitting testimonial evidence to go to the jury room as the "continuing witness rule."

controlled drug transaction, *Liggins v. Texas,* 979 S.W.2d 56, 65 (Tex.App.1998); secretly audio-taped recording of drug transaction, *Washington v. Castellanos,* 132 Wash.2d 94, 935 P.2d 1353, 1356–57 (1997) (en banc), *Pino v. Wyoming,* 849 P.2d 716, 719 (Wyo.1993), *Iowa v. Hernandez,* No. 12–0219, 832 N.W.2d 384, 2013 WL 1452958, at *6 (Iowa Ct.App. Apr. 10, 2013); soundless video documenting law enforcement's search of defendant's property and seizure of evidence therefrom, *Montana v. Christenson,* 250 Mont. 351, 820 P.2d 1303, 1310 (1991); video of defendant watering marijuana plants, *Pfaff v. Oklahoma,* 830 P.2d 193, 195 (Okla.Crim. App.1992).

▮ Finally, we turn to Justice Cunningham's assertion that: "The admission of written or videotaped confessions into evidence, and their review in the jury room, is a long standing practice in this Commonwealth. We do violence to, and seriously undermine, that practice here today." The Kentucky Rules of Evidence treat prior statements of witnesses differently than prior statements of parties. KRE 801A provides:

 (a) Prior statements of witnesses. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is:

 (1) Inconsistent with the declarant's testimony;

 (2) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; or

 (3) One of identification of a person made after perceiving the person.

 (b) Admissions of parties. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is:

 (1) The party's own statement, in either an individual or a representative capacity. . . .

Accordingly, a defendant's confession is *always* admissible and is never hearsay under KRE 801A(b), whereas other witnesses' prior statements are only admissible under the three circumstances defined in KRE 801A(a). Justice Cunningham's suggestion that our opinion today could "undermine" "[t]he admission of written or videotaped confessions into evidence" is simply incorrect.

What is still unclear, perhaps, is whether a party's recorded confession—which is obviously testimonial in nature—may be taken to the jury room upon deliberation. Although this Court has not addressed that specific issue, the majority of jurisdictions allow a recorded confession—written or electronic—to go to the jury room during deliberations.[11] We reserve judgment on the issue until it is properly before us.

*Id.* "Documents that are prohibited by the 'continuing witness' objection from going out with the jury are usually testimonial documentary evidence and include affidavits, answers to written interrogatories, written dying declarations, and written confessions or statements of criminal defendants." *Id.* Georgia is one in a minority of states that does not permit the jury to take recorded confessions to the jury room. *See* note 11, *infra.*

11. *See Flonnory v. Delaware,* 893 A.2d 507, 528 (Del.2006); *Jackson v. Virginia,* 267 Va. 178, 590 S.E.2d 520, 533 (2004); *New Hampshire v. Monroe,* 146 N.H. 15, 766 A.2d 734, 736–37 (2001); *Harris v. Indiana,* 659 N.E.2d 522, 527 (Ind.1995); *Maine v. Mannion,* 637 A.2d 452, 456 (Me.1994); *West Virginia v. Dietz,* 182 W.Va. 544, 390 S.E.2d 15, 28–29 (1990); *Wisconsin v. Jensen,* 147 Wis.2d 240, 432 N.W.2d 913, 921–22 (1988); *Stone v.*

## 2. RCr 9.74

RCr 9.74 addresses communications between the court and the jury after it has retired for deliberation, and provides:

> No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant (unless the defendant is being tried in absentia) and the entire jury, and in the presence of or after reasonable notice to counsel for the parties.

As a threshold matter, we consider the jury's request for video equipment to rewatch Kilgore's statement to Detective Trees to be "information requested by the jury" under RCr 9.74. *See Malone v. Commonwealth,* 364 S.W.3d 121, 132 (Ky. 2012). In *Malone,* we treated a jury's request to rehear a witness's audiotaped statement to police as "information requested by the jury" and analyzed the court's response under RCr 9.74 and 8.28. *Id.* at 132–34; *see also McGuire v. Commonwealth,* 368 S.W.3d 100, 115 (Ky.2012). Although we recognize that in *Malone* the jury *directly* requested to rehear taped evidence, the jury's request for video equipment in this case is functionally identical to that in *Malone,* as it was *indirectly* asking to rehear evidence under the presumption that it was so entitled.

RCr 9.74 requires that information requested by the jury be given in open court in the presence of the defendant, and in the presence of (or after reasonable notice to) counsel. In *Malone,* we interpreted this rule as requiring the defendant's presence "both as the response is being formulated and when it is delivered." *Id.* at 133. We further concluded that "if the deliberating jury receives additional instruction or is allowed to rehear testimony, the instruction or the rehearing should take place in open court before the entire jury, and the defendant should be present, unless he chooses not to be." *Id.* at 134. *See also McGuire,* 368 S.W.3d at 115 ("Pursuant to RCr 9.74, the replaying of witness testimony is to be on the record in open court in the presence of the defendant.") (citations omitted).

With this in mind, we hold that the trial court committed two RCr 9.74 violations. First, it violated RCr 9.74 when, after receiving a request for information from the jury, it formulated and delivered a response outside Appellant's presence and outside the presence of (and without reasonable notice to) defense counsel. Both Appellant and defense counsel were entitled to be present when the court was formulating a response and when it delivered its response. *See Malone,* 364 S.W.3d at 133. Second, the trial court

*Wyoming,* 745 P.2d 1344, 1349–50 (Wyo. 1987); *Massachusetts v. Fernette,* 398 Mass. 658, 500 N.E.2d 1290, 1295 (1986); *North Dakota v. Halvorson,* 346 N.W.2d 704, 712 (N.D.1984); *Washington v. Frazier,* 99 Wash.2d 180, 661 P.2d 126, 130–32 (1983); *Missouri v. Evans,* 639 S.W.2d 792, 795 (Mo. 1982) (en banc); *Hampton v. Alaska,* 569 P.2d 138, 146 (Alaska 1977); *Illinois v. Caldwell,* 39 Ill.2d 346, 236 N.E.2d 706, 713 (1968); *Oregon v. Reyes,* 209 Or. 595, 308 P.2d 182, 196 (1957); *Iowa v. Triplett,* 79 N.W.2d 391, 398–99 (Iowa 1956); *Minnesota v. Gensmer,* 235 Minn. 72, 51 N.W.2d 680, 685–86 (1951); *Connecticut v. Castelli,* 92 Conn. 58, 101 A. 476, 480 (1917); *Ohio v. Doty,* 94 Ohio St. 258, 113 N.E. 811, 813–14 (1916); *Thomas v. Florida,* 878 So.2d 458, 459 (Fla.Dist.Ct.App. 2004); *Cleary v. Oklahoma,* 942 P.2d 736, 744 (Okla.Crim.App.1997). *See also* Jonathan M. Purver, Annotation, *Permitting documents or tape recordings containing confessions of guilt or incriminating admissions to be taken into jury room in criminal case,* 37 A.L.R.3d 238 (1971); 2 *McCormick on Evidence* § 220 (7th ed.2013) ("Written or recorded confessions in criminal cases, however, are in many jurisdictions allowed to be taken by the jury despite their obvious testimonial character.").

again violated RCr 9.74 when it permitted the jury to review Kilgore's videotaped statement in the privacy of the jury room; this event should have occurred in open court, and in Appellant's presence. *See id.* at 134; *McGuire*, 368 S.W.3d at 115; *Mills*, 44 S.W.3d at 371. Thus, we turn our attention to whether these errors can be deemed harmless. *See* RCr 9.24.[12]

With respect to the first RCr 9.74 violation—formulating and delivering a response to a jury inquiry outside of Appellant's and defense counsel's presence— there is no authority from this Court directly on point. However, in *Welch v. Commonwealth*, we deemed a communication similar to the one in the case before us to be harmful error. 235 S.W.3d 555, 558–59 (Ky.2007). In that case,

> [a]fter retiring to the jury room for deliberations, the jury sent the trial court a cryptic note that said, "Willie Allen's testimony regarding their activity when they left White Castle." The trial judge's written ex parte response was "[w]e are finding the tape and the portion of the testimony after they left White Castle. Is there a particular statement you are looking for? S/Gary Payne." The jury then wrote, "Was Rob Welch in the car when Willie Allen hid the guns the first time?" And the trial judge's written ex parte response sent back to the jury room was "[y]es— he was in the car. S/Gary Payne."

*Id.* at 557. As in the present case, the jury requested information that had already been introduced as evidence and neither the appellant nor defense counsel were present or provided reasonable notice of the jury's request. *See id.* After concluding in *Welch* that the trial court's exchange with the jury violated RCr 9.74, we reviewed for harmless error, *id.*, which, in the context of ex parte communications between judge and jury, we defined as "contact [that] does not impugn the fundamental fairness of an otherwise constitutionally acceptable trial." *Id.* at 558.

We first noted that opportunities for ex parte communication between judge and jurors are "[e]xpected in the course of a jury trial," *id.*, but that most of these contacts "are innocuous because they do not concern issues central to the case," *id.* We then held that the communication at issue in that case was not of the "innocuous" type because the jury's question— whether the defendant was in the car when a co-accused allegedly hid guns—"went to the heart of the tampering with physical evidence charge against Welch." *Welch*, 235 S.W.3d at 558. Although the court's answer to the jury's question was supported by evidence, we held that the RCr 9.74 violation could not be deemed harmless "because the contact involved the jury's deliberation concerning a central issue in the case." *Id.*

Here, the trial court's communications are clearly less serious than the trial court's response in *Welch*. While the court should have secured the presence of Appellant and defense counsel while formulating and delivering a response to the jury's inquiry, its erroneous ex parte communication—sending a DVD player to the

12. RCr 9.24 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

jury room, followed by a "clean" computer on which to re-watch Kilgore's statement—although an RCr 9.74 violation, constitutes harmless error. It did not directly concern an issue central to the case, nor go to the heart of an indicted charge. In short, the communication was innocuous, it did not "impugn the fundamental fairness of an otherwise constitutionally acceptable trial," *Welch,* 235 S.W.3d at 558, and Appellant's "substantial rights" were therefore not affected, RCr 9.24.

 The second RCr 9.74 violation—permitting the jury to review Kilgore's videotaped statement in the privacy of the jury room—presents a more difficult question. We acknowledged in *Malone* that this violation could, in certain circumstances, be deemed harmless error; *Malone,* however, did not present an opportunity for this Court to articulate the proper standard with which to review this factual scenario for harmless error. Although this type of RCr 9.74 violation will sometimes implicate constitutional rights, *see,*

*e.g., Mills,* 44 S.W.3d at 372 (implicating federal constitutional right to be confronted with the witnesses against oneself),[13] this case does not present such a scenario;[14] thus, we may deem the error harmless if we "can say with fair assurance that the judgment was not substantially swayed by the error." *See Winstead,* 283 S.W.3d at 688–89 (*citing Kotteakos,* 328 U.S. 750, 66 S.Ct. 1239). "The inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Id.* (*quoting Kotteakos,* 328 U.S. at 765, 66 S.Ct. 1239).

As discussed in Section II.C.I, *supra,* the primary concern with permitting a jury to review testimony in the privacy of the jury room is that it will accord that testimony "undue emphasis." *See Burkhart,* 125 S.W.3d at 850.[15] "With such [testimonial] exhibits, there is concern that

---

**13.** In *Mills,* this Court found harmful RCr 9.74 error in permitting a jury to review videotaped witness statements to police in the privacy of the jury room. 44 S.W.3d at 372. *Mills,* however, is distinguishable in that the tapes the jury was permitted to review were not played during trial, *id.* at 371, and no foundation "was laid for admitting the statements under KRE 613," *id.* at 372; thus, the videotaped statements were wholly inadmissible, *id.* We continued:

> Perhaps more importantly, the error goes far beyond violating a rule of evidence.... [T]he interview tapes were never heard by the jury during the trial in the presence of Mills and his counsel. The statements were never subjected to adversarial testing. Allowing the jury to hear these tapes in the manner described above was an error of serious constitutional magnitude.

*Id.* Accordingly, we reversed and remanded for a new trial.

**14.** See Section II.B. *supra.* As previously noted, Kilgore's statement was introduced at trial, and was subjected to adversarial testing. Thus, Appellant's constitutional right to be

confronted with the witnesses against him is not implicated here.

**15.** *See also* 75B Am.Jur. *Trials* § 1451 (2007) ("While a jury's viewing of an abridged version of a tape, rather than the tape in its entirety, may place an undue emphasis on the specific portion of testimony revealed for a second time, where, to the contrary, the tape is played in its entirety, in open court, under the supervision of the court with defendant and counsel present the problems arising from an abridged replay—undue emphasis—are not present."). *C.f. Berrier v. Bizer,* 57 S.W.3d 271, 277 (Ky.2001) (" '[B]ecause jurors may give undue weight to the testimony contained within a deposition which they take with them and may not accord adequate consideration to controverting testimony received from live witnesses, it is the universal rule that depositions may not be reviewed by a jury on an unsupervised basis.' ") (*quoting People v. Montoya,* 773 P.2d 623, 625 (Colo. Ct.App.1989)).

jurors may accord great weight to testimony re-examined during deliberations, as compared to the 'live' evidence heard at trial, because the unreviewed testimony 'can only be conjured up by memory.'" *Id.* (*quoting Wright,* 16 S.W.3d at 572).

Although this Court takes concerns of undue emphasis seriously, we cannot conclude that the error that occurred was harmful. Had proper procedure been followed, the jury would have been permitted to re-watch the videotape in its entirety, in open court. We do not believe that the error that occurred—that is, permitting the jury to re-watch the video *privately*—substantially swayed their verdict. Indeed, we can say with fair assurance that it would have come to the same verdict had it re-watched the video in open court. We therefore hold that the second RCr 9.74 error was harmless.

### 3. RCr 8.28

■ RCr 8.28(1) provides, in pertinent part, that "[t]he defendant shall be present at the arraignment, at every critical stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of the sentence." Appellant argues that the trial court violated his right to be present when it permitted the jury to review the video in private. In *Watkins v. Commonwealth,* this Court noted:

> This right is rooted in the confrontation clause of the Sixth Amendment to the United States Constitution as well as the due process clause when a defendant is not actually being confronted by witnesses or evidence against him. The United States Supreme Court has explained that a defendant has a right to be present "whenever his presence has a

relation, reasonably substantial, to the fullness of his opportunity to defend against the charge ... [and it] is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, *and to that extent only.*"

105 S.W.3d 449, 452–53 (Ky.2003) (emphasis added) (citations omitted) (*quoting Snyder v. Massachusetts,* 291 U.S. 97, 107–08, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled on other grounds by Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)).

■ Assuming, without deciding, that re-watching a witness's videotaped statement during deliberations is a "critical stage of the trial," we conclude that failing to secure Appellant's presence constitutes harmless error at worst.[16] That is, there is "no reasonable possibility that it contributed to the conviction." *Winstead,* 283 S.W.3d at 689 n. 1 (*quoting Anderson v. Commonwealth,* 231 S.W.3d 117, 122 (Ky. 2007)) (recognizing the "no reasonable possibility" test as the "harmless-error standard applicable to constitutional errors"). Appellant was present when the video was originally played for the jury, and he was afforded a constitutionally adequate opportunity to defend against the statements made therein. *See* Section II.B. *supra.* We therefore hold that failure to secure Appellant's presence when the jury re-watched Kilgore's statement, if RCr 8.28 error at all, is "harmless beyond a reasonable doubt." *Winstead,* 283 S.W.3d at 689 n. 1 (*quoting Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

---

16. We are not convinced, however, that " 'a fair and just hearing [was] thwarted by [Appellant's] absence' " during the replaying of the videotaped statement. *Watkins,* 105 S.W.3d at 452–53 (*quoting Snyder,* 291 U.S. at 107–08, 54 S.Ct. 330).

## D. Appellant's Statement to Police and the Rule of Completeness

 Appellant next contends that the trial court violated the "rule of completeness" and denied him his rights to present a defense, due process of law, and a fair trial when it prohibited him from introducing his entire statement to police. Appellant concedes that resolving this issue in his favor would require us to overrule *Schrimsher v. Commonwealth*, 190 S.W.3d 318 (Ky.2006) and *Rodgers v. Commonwealth*, 285 S.W.3d 740 (Ky.2009). Finding no compelling reason to do so, we decline his invitation.

During its case-in-chief, the Commonwealth called Detectives Kyle Willet and John Lesher to testify. Detectives Willett and Lesher interrogated Appellant the afternoon of his arrest in September 2009. The Commonwealth elicited statements Appellant made to the detectives which were duly admitted through the hearsay exception concerning admissions of a party opponent, KRE 801A(b)(1). In a pretrial motion *in limine*, Appellant argued that if the Commonwealth planned to question the detectives about statements he made during his interrogation, the "rule of completeness," KRE 106, required the Commonwealth to play Appellant's recorded statement in full (with certain redactions). At trial, the court did not require the Commonwealth (or permit Appellant) to play the entire recorded statement (approximately three hours in duration), but granted defense counsel substantial leeway in her cross-examination of the Detectives. Appellant assigns error to the trial court's decision not to require his entire statement to be played for the jury.

 Appellant's statements, although hearsay, were properly admitted under the admissions of a party opponent exception codified in KRE 801A(b)(1).[17] The so-called "rule of completeness," KRE 106, provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Appellant apparently believes that his entire statement to the detectives "ought in fairness to be considered" by the jury. We are unpersuaded.

 We addressed this very issue in *Schrimsher* and thoroughly analyzed and interpreted the interplay between hearsay statements and KRE 106. Because of its relevance to the case before us, and because we cannot improve upon its analysis, we reproduce a significant portion of *Schrimsher* below:

[A] party purporting to invoke KRE 106 for the admission of otherwise inadmissible hearsay statements may only do so to the extent that an opposing party's introduction of an incomplete out-of-court statement would render the statement misleading or alter its perceived meaning. "The issue is whether 'the meaning of the included portion is altered by the excluded portion.'" *Young [v. Commonwealth]*, 50 S.W.3d [148,] 169 [(Ky.2001)] (quoting *Commonwealth v. Collins*, 933 S.W.2d 811, 814 (Ky.1996)).

The single purpose of considering the utterance as a whole is to be able to put a correct construction upon the part which the first party relies upon, and to avoid the danger of mistaking the effect of a fragment whose meaning is modified by a later or prior part. . . .

---

**17.** KRE 801A(b)(1) provides: "A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is [t]he party's own statement, in either an individual or a representative capacity. . . ."

[Robert G.] Lawson, [*The Kentucky Evidence Law Handbook*], § 1.30[2], at 67 (quoting 7 Wigmore, *Evidence in Trials at Common Law*, § 2550 (Chadbourne rev.1978)). Contrary to Appellant's position, KRE 106 does not "open the door" for introduction of the entire statement or make other portions thereof admissible for any reason once an opposing party has introduced a portion of it.

The completeness doctrine is based upon the notion of fairness—namely, whether the meaning of the included portion is altered by the excluded portion. The objective of that doctrine is to prevent a misleading impression as a result of an incomplete reproduction of a statement. *This does not mean that by introducing a portion of a defendant's confession in which the defendant admits the commission of the criminal offense, the Commonwealth opens the door for the defendant to use the remainder of that out-of-court statement for the purpose of asserting a defense without subjecting it to cross-examination.*

*Gabow v. Commonwealth*, 34 S.W.3d 63, 69 n. 2 (Ky.2000) (citations and quotations omitted) (emphasis added). That is precisely what Appellant was endeavoring to do by attempting to introduce the exculpatory portions of the videotape, *i.e.*, introduce his own exculpatory statements without subjecting them to cross-examination. (Appellant did not testify at trial.) His statements made during the interrogation were inadmissible hearsay—admissible when offered by the Commonwealth as admissions of a party opponent, KRE 801A(b), but inadmissible when offered by himself. *Id.* Accordingly, KRE 106 applied only to the extent that fairness required the introduction of additional portions of the interrogation to correct or guard against any likely misperception that would be created by an opponent's presentation of a fragmented version of the statement. *Schrimsher*, 190 S.W.3d at 330–31.[18]

Here, Appellant is attempting to thwart hearsay rules and admit his entire state-

---

**18.** Appellant argues that *Schrimsher's* recitation of the "rule of completeness" conflicts with *Meadors v. Commonwealth* where our predecessor court explained:

It is a rule of equal general recognition in the practice of criminal law that where the prosecution introduces statements of the defendant tending to show that he is guilty, he has the right, on cross-examination, to elicit from the witnesses relating those statements the whole of the relevant and material subject matter, even though the statements so drawn out are self-serving or favorable to him. 1 Greenleaf, *Evidence*, Section 218; Wharton, *Criminal Evidence*, p. 1299; 70 C.J. 632, 706; *Green v. Commonwealth*, 83 S.W. 638, 26 Ky. Law Rep. 1221 [(Ky.1904)]; *Powers v. Commonwealth*, 110 Ky. 386, 61 S.W. 735, 22 Ky. Law Rep. 1807, 53 L.R.A. 245 [(1901)]; *McCandless v. Commonwealth*, 170 Ky. 301, 185 S.W. 1100; *Collins v. Commonwealth*, 227 Ky. 349, 13 S.W.2d 263. Commenting on the rule as to admitting all the prisoner said on the subject at the time of making a confession, the court wrote in *Berry v. Commonwealth*, 73 Ky. 15, 10 Bush 15: "This rule is the dictate of reason as well as of humanity. The prisoner is supposed to have stated a proposition respecting his own connection with the crime; but it is not reasonable to assume that the entire proposition with all its limitations was contained in one sentence, or in any particular number of sentences, excluding all other parts of the conversation."

136 S.W.2d 1066, 1068 (Ky.1940). We are not convinced that *Meadors* is inconsistent with KRE 106: *Meadors* permits the defendant to elicit that part of the statement that is "relevant and material" to the part of the statement elicited by the prosecution, while KRE 106 permits the introduction of that part of the statement that "ought in fairness to be considered contemporaneously with" the part introduced by the adverse party. Stated differently, the "relevant and material" parts of

ment without being subject to cross-examination. Appellant wishes to show the jury that police interrogation techniques are designed to induce a confession, and that the application of those techniques for over three hours made his repeated denials reliable. We do not believe that the police's interrogation techniques, however, render the statements elicited by Detectives Willett and Lesher misleading or alter their perceived meaning. Rather, Appellant seeks only to *bolster* his own hearsay statements by showing the jury that despite techniques designed to elicit a confession, he maintained his innocence for over three hours. KRE 106 does not permit him to do so under the facts presented in this case. And, in any event, the trial court granted defense counsel substantial latitude in her cross-examination of Detectives Willett and Lesher. In our view, she was quite successful in exposing police interrogation techniques for their confession-inducing qualities.

Thus, we hold that the trial court properly denied Appellant's request to introduce his entire statement, and properly exercised its discretion by permitting defense counsel ample latitude on cross-examination to contextualize the statements elicited by the Commonwealth. *See id.* at 330 ("A trial court's ruling under KRE 106 (*i.e.,* the 'rule of completeness') is discretionary." (*citing* KRE 106 Drafters' Commentary 1989; *United States v. Mussaleen,* 35 F.3d 692, 696 (2d Cir.1994); *United States v. Maccini,* 721 F.2d 840,

844–45 (1st Cir.1983); Lawson, *supra,* § 1.20[3][b], at 68–69 (4th ed.2003))).

**E. Commonwealth's Closing Argument and Right to a Fair Trial**

██ During closing arguments, the Commonwealth made the following statement:

> Now I did not go over the entire statement that Mr. McAtee had. Certainly, as you saw, [defense counsel] was able to bring out anything that she wanted in that statement. She asked several questions of the detectives who questioned him. If there was something important, it would have come out, either from us or the defense.

Defense counsel objected arguing that the prosecutor's statement was improper. She reminded the court that her questioning was limited by hearsay rules and argued that the prosecutor was making it sound like she *chose* not bring out any other part of Appellant's three-hour interrogation. She then requested that the court admonish the jury that she did not, in fact, get to bring out everything that she wanted about Appellant's statement. She also requested that the prosecutor's statement be stricken from the record.[19] The court then overruled the objection.

The prosecutor continued his closing argument:

> Ladies and gentlemen, I believe I left off saying that we were given an opportunity to ask detectives what Mr. McAtee

the statement are arguably those parts of the statement that "ought in fairness to be considered contemporaneously with" the statements already elicited. In fact, this seems to be precisely how *Meadors* has been interpreted. *See Commonwealth v. Collins,* 933 S.W.2d 811, 814 (Ky.1996).

Insofar as they could be read as inconsistent, *Schrimsher's* interpretation of KRE 106 would supersede the rule in *Meadors. See Burchett v. Commonwealth,* 98 S.W.3d 492,

511 (Ky.2003) (" '[W]hen there is an adopted Rule of Evidence that speaks to the contested issue, the adopted Rule occupies the field and supersedes the former common law interpretation.' ") (*quoting Garrett v. Commonwealth,* 48 S.W.3d 6, 14 (Ky.2001) (*citing Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 587–89, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993))).

19. For these reasons, this issue is properly preserved for our review.

said. Defense was given that opportunity as well. And as [defense counsel] brought up, ladies and gentlemen, there is three hours of testimony. [Defense counsel] was asking Detective Lesher and Detective Willett, "What kind of questions did you ask?" And even Detective Lesher said, "Yes, there is a lengthy period when they weren't even talking about the case at all." I figured I would spare you, ladies and gentlemen, that part of the statement.

Appellant argues that the Commonwealth's closing argument deprived him of a fair trial. Specifically, he contends that the prosecutor's statement that defense counsel was able to "bring out anything that she wanted in [Appellant's] statement to police" and that "[i]f there was something important, it would have come out" misled the jury into believing that the statement contained only a few parts favorable to the defense, consisted of inculpatory admissions, and the defense had the ability to admit any part of the statement that was favorable.

■■■■ "Any consideration on appeal of alleged prosecutorial misconduct must center on the overall fairness of the trial. In order to justify reversal, the misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair." *Stopher v. Commonwealth*, 57 S.W.3d 787, 805 (Ky.2001) (citations omitted). "While the prosecutor has a duty to confine his or her argument to the facts in evidence, *Caretenders, Inc. v. Commonwealth*, 821 S.W.2d 83, 89 (Ky.1991), the prosecutor is entitled to draw reasonable

inferences from the evidence, make reasonable comment upon the evidence and make a reasonable argument in response to matters brought up by the defendant, *Hunt v. Commonwealth*, 466 S.W.2d 957, 959 (Ky.1971)." *Childers v. Commonwealth*, 332 S.W.3d 64, 73 (Ky.2010).

■■■ We have identified two grounds for which reversal is required for prosecutorial misconduct:

> If this Court (first) determines that a prosecutor engaged in misconduct in closing argument, reversal is required where "the misconduct is 'flagrant' *or* if each of the following three conditions is satisfied: (1) Proof of defendant's guilt is not overwhelming; (2) Defense counsel objected; and (3) The trial court failed to cure the error with a sufficient admonishment to the jury."

*Hannah v. Commonwealth*, 306 S.W.3d 509, 518 (Ky.2010) (*quoting Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006) (*citing Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky.2002))). Under either scenario, we must first determine as a threshold matter whether the prosecutor "engaged in misconduct in closing argument." *Id.* We conclude that he did not.

To begin with, although defense counsel was precluded by the hearsay rules from playing Appellant's entire videotaped statement for the jury, the trial court did not preclude her from introducing *any* part of the statement that she attempted to introduce through cross-examination of Detectives Lesher and Willett.[20] In fact, during a sidebar prompted by a Common-

---

**20.** During defense counsel's cross-examination of Detectives Lesher and Willett, the Commonwealth objected four times on grounds that counsel was impermissibly thwarting hearsay rules and introducing Appellant's hearsay statements. The trial court overruled all four objections, noting that the Commonwealth could introduce the video-

taped statement if it wanted to; because it chose not to, the court was inclined to permit defense counsel wide latitude in contextualizing the parts of Appellant's statement introduced through direct examination of Detectives Lesher and Willett. *See* note 21 *infra* and accompanying text.

wealth's objection on *Schrimsher* grounds, see Section II.D. *supra,* defense counsel acknowledged that she was not permitted to elicit exculpatory hearsay from the detectives; however, the trial court's ruling to that objection was to *permit* defense counsel to "get into specific denials that [Appellant] made." [21] In other words, defense counsel was permitted to elicit *exculpatory* statements Appellant made to Detectives Lesher and Willett. Additionally—and importantly—Appellant identifies no part of his statement that he would have introduced had he not been precluded by the hearsay rules from doing so. Thus, Appellant has not demonstrated how the prosecutor's statement that defense counsel "was able to bring out anything she wanted" was incorrect. Indeed, it appears to this Court that defense counsel was able to (and did) bring out anything she wanted.

Second, Appellant's assertion that the prosecutor's closing argument misled the jury into believing Appellant's statement consisted of inculpatory admissions is unsupported and unfounded. In fact, we believe this argument is belied by what the prosecutor *actually* said: "[i]f there was something important [in Appellant's statement], it would have come out, either from us or the defense." .One would expect that if Appellant had confessed or otherwise inculpated himself in the murder, it would have been "important" enough for the Commonwealth to introduce. However, as defense counsel repeatedly noted, Appel-

lant did nothing but *deny* any involvement in Rodney Haskin's murder. Thus, Appellant's contention that "the jury was free to infer that [Appellant] had confessed or made admissions" is baseless.

Finally, Appellant argues that the prosecutor's statement "was prejudicial because the jury was free to infer that the statement did not help the defense," and that "[t]he jury was left with the false impression that the lengthy, recorded statement contained only a few parts favorable to the defense." He fails, though, to point to *any* part of the statement that *was* favorable to him that he was prevented from introducing to the jury. Rather, the argument seems to be, as it was in Section II.D. *supra,* that his repeated denial of any involvement in the murder, despite over three hours of interrogation practices designed to elicit a confession, was *generally* "favorable" to him. However, as previously mentioned, the trial court extended defense counsel wide latitude in questioning the detectives about their interrogation tactics and defense counsel successfully exposed those techniques for their confession-inducing qualities.

In sum, Appellant has failed to convince this Court that the Commonwealth's closing argument was incorrect; or that even if we were to assume it was incorrect, that it prejudiced him and compromised the fundamental fairness of his trial. *See Stopher,* 57 S.W.3d at 805. Defense counsel was given an opportunity to ask the detec-

---

**21.** After hearing the Commonwealth's objection, the following exchange occurred:

*Judge:* Well I agree with the defense on this issue. The Commonwealth has elected not to play the statement between Willett and McAtee or Lesher and McAtee. Detective Willett said on the stand that the interview became confrontational and I think it's appropriate for defense counsel to be able to cross-examine him on the issue of confrontation. So objection overruled.

*Prosecutor:* Is the court ruling that the defense is allowed to get into the specific denials Mr. McAtee made?
*Judge:* Yes, so far. It may .change depending on the questions. But it's not like the taped statement is off-limits to the Commonwealth for any reason. The Commonwealth *could* play the tape for the jury. Thereafter, the judge never prevented defense counsel from eliciting any of Appellant's denials.

tives what Appellant said; she was permitted to elicit exculpatory statements and introduce other statements regarding his family and employment that she deemed important and favorable; and insofar as the rules of hearsay prevented Appellant from playing his entire statement to the jury, he fails to identify a single sentence that he was prevented from introducing at trial. Rather, he seems to complain that his inability *show* the jury how successful he was at denying involvement for three hours despite interrogation techniques designed to elicit a confession rendered the prosecutor's statement misleading. We disagree. Accordingly, we conclude that the prosecutor's statements during closing argument do not constitute misconduct. Appellant's right to a fair trial was therefore not compromised.

### F. KRS 532.055(4), RCr 9.57, and Ordering Further Deliberation

Finally, Appellant argues that the trial court's decision to order further deliberation after the jury indicated that it could not agree on sentencing resulted in a coerced verdict. Specifically, he argues that KRS 532.055(4) required the trial court to impose the sentence once the jury reported it could not come to an agreement. In response, the Commonwealth argues that the court correctly sent the jury back for further deliberations pursuant to RCr 9.57.

Shortly after sentencing-phase deliberations began, the jury sent a note to the trial court asking "[w]hat degree of agreement is required of the. jury?" After consulting with counsel in open court, the judge sent the jury the reply: "Unanimous." Less than an hour later, the jury sent a second note to the judge: "We are not going to be able to come to a unanimous decision on the sentence." After again conferring with counsel in open court, the Commonwealth requested the jury be given an *Allen-type* charge.[22] Defense counsel argued that KRS 532.055(4) required the judge to impose the sentence. The judge indicated that he would bring the jury back to the courtroom and give them an *Allen* charge "to see if there is any hope that further deliberations may be helpful."

After bringing the jury back to the courtroom, the judge asked the jury by a show of hands: "Do you think it's possible that with further deliberation—maybe a lunch break—that further deliberation might be helpful." The judge indicated that "most" of the jury thought progress might be made with more time and a lunch break. After deciding to send the jury back for further deliberations, the judge read the text of RCr 9.57(1)(a)—(e) verba-

**22.** See *Commonwealth v. Mitchell*, 943 S.W.2d 625, 626 (Ky.1997), where this Court explained:

Prior to the adoption of RCr 9.57, effective August 1, 1992, the trial judges of this Commonwealth were afforded substantial discretion as to how to instruct a deadlocked jury, so long as the instruction did not attempt to coerce the jury or indicate the judge's own opinion as to the verdict. *Abbott v. Commonwealth*, Ky., 352 S.W.2d 552 (1961); *McMillan v. Commonwealth*, 258 Ky. 354, 80 S.W.2d 24 (1935); *cf. Burnam v. Commonwealth*, 283 Ky. 361, 141 S.W.2d 282 (1940). Most trial judges used the so-

called "*Allen* charge," see *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and that instruction was specifically approved in *Earl v. Commonwealth*, Ky.App., 569 S.W.2d 686 (1978). However, in *McCampbell v. Commonwealth*, Ky.App., 796 S.W.2d 596 (1990), another Court of Appeals panel criticized the *Allen* charge and noted that the preferred view with respect to charging a deadlocked jury is that reflected in 3 *American Bar Association Standards for Criminal Justice*, Standard 15–4.4 (2d ed.1980). It is this standard which is now codified in RCr 9.57(1).

tim to the jury. Approximately two hours later, the jury returned with a unanimous verdict recommending a twenty-five year sentence for the murder conviction and a five year sentence for the tampering conviction, to run concurrently. Appellant alleges that this verdict was coerced.

RCr 9.57 provides, in pertinent part:

(1) If a jury reports to a court that it is unable to reach a verdict and the court determines further deliberations may be useful, the court shall not give any instruction regarding the desirability of reaching a verdict other than one which contains only the following elements:

(a) in order to return a verdict, each juror must agree to that verdict;

(b) jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(c) each juror must decide the case, but only after an impartial consideration of the evidence with the other jurors;

(d) in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change his or her opinion if convinced it is erroneous; and

(e) no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of other jurors, or for the mere purpose of returning a verdict.

KRS 532.055(4) provides: "In the event that the jury is unable to agree as to the sentence or any portion thereof and so reports to the judge, the judge shall impose the sentence within the range provided elsewhere by law."

We conclude that RCr 9.57 and KRS 532.055(4) can, and should, be read together. When a jury indicates to a trial court that it is unable to come to a unanimous verdict on the sentence, it is not improper for the court to probe the jury to determine whether further deliberation may be useful. If, however, the probing reveals that further deliberation will likely not be useful, KRS 532.055(4) requires the court to impose the sentence "within the range provided elsewhere by law." Whether further deliberations may be useful is a determination best left within the sound discretion of the trial court. We believe, however, that where, as here, a majority of the jurors indicate that further deliberation may be useful, the judge properly exercises his discretion to order further deliberation.

Thus, we reject Appellant's contention that the court was required to impose the sentence once the jury reported it was not going to be able to come to a unanimous decision. Rather, we believe Judge Willett properly probed the jury to determine whether further deliberations would be useful pursuant to RCr 9.57. Moreover, once determining that they would, we believe he properly read RCr 9.57 to the jury. *See Williams v. Commonwealth*, 147 S.W.3d 1, 9 (Ky.2004); *Commonwealth v. Mitchell*, 943 S.W.2d 625 (Ky.1997).[23] In *Williams*, we noted that "any possibility of coercion was vitiated by the trial court's instruction to the jurors that they should not relinquish honest convictions for the mere purpose of obtaining a verdict." 147 S.W.3d at 9 (*citing Mitchell*, 943 S.W.2d 625). Judge Willett gave an identical instruction in the case before us. Accordingly, we conclude

---

**23.** *Mitchell* provides a lengthy analysis of RCr 9.57 and American Bar Association Standard for Criminal Justice 15–4.4, from which RCr 9.57 was adopted.

that the trial court did not coerce a verdict from the jury.

## III. CONCLUSION

In conclusion, we hold that Appellant was entitled to a directed verdict of acquittal on his tampering with physical evidence charge. We therefore reverse his conviction and vacate his sentence for that charge. However, we affirm his murder conviction and its corresponding sentence.

MINTON, C.J., ABRAMSON, NOBLE, and VENTERS, JJ., concur. KELLER, J., concurs in result only without separate opinion. CUNNINGHAM, J., concurs in result only by separate opinion.

CUNNINGHAM, J., Concurring in Result:

I concur in result only. I respectfully submit that the majority goes to great length in its expansive dicta to turn *Jett v. Commonwealth* on its head and, by implication, even creates confusion as to the proper use of written or videotaped confessions.

On July 9, 2009, Rodney Haskins was murdered in front of Pamela Beals and Gregory Kilgore. Both gave incriminating statements against Appellant. Beals gave her statement by telephone. Kilgore gave his statement during a videotaped interview. Both changed their stories at trial and said they could not remember. The trial court properly allowed the Commonwealth to impeach both witnesses by their prior statements. As the majority correctly notes in citing KRE 801(a)(1), a statement is inconsistent if the witness simply "claims to be unable to remember it." The trial court allowed into evidence the notes of Detective Trees' telephone interview with Beals and the videotaped interview with Kilgore.

Perhaps what most disturbs me about the majority opinion is its totally misplaced reliance on *Berrier v. Bizer*. That case is in no way germane to the discussion at hand. It was a wrongful discharge from employment case. The employer went through the store getting statements from employees and reduced them to written summaries. Before trial, the employer asked the employees to review the statements for correctness and initial them. At trial, the employees were called to testify. The defendant employer then asked that the summaries be introduced into evidence to bolster and supplement their testimony. Objections were made, but they were admitted anyway. This Court ruled it was error to admit the summaries because no foundation had been established for their admission. There were also matters in the summaries which the witnesses did not testify to at trial, making their content hearsay.

The *Berrier* court went to great lengths to explore different ways the reports might have been admissible. One option where they would have been admissible was if they had been inconsistent statements from the witnesses' testimony at trial, as allowed by KRE 801. The Court said that the witnesses "did not testify inconsistently with the contents of the 'witness interview' summaries." Of course, that is exactly what we have here. So, the *Berrier* decision does not contravene the trial court's ruling here, but actually supports it.

I am especially concerned with our Court's direction here today in regard to the videotaped interview with Kilgore and the transcript. Unlike the detective's notes, this was the actual verbatim statement of the witness without any opportunity for an error in reporting of its content.

The majority makes it clear that evidence of the contents of inconsistent

statements of witnesses—be they written, orally recorded, or videotaped—may be "introduced" by way of witnesses; but the statements themselves do not come in as exhibits and go to the jury room.

For almost 45 years, the landmark case of *Jett v. Commonwealth* has stood in good stead to assist litigants in capturing the truth out of witnesses who, for various reasons, try to lie in court. The progeny of that historic decision includes a myriad of cases where the recordings—either written, oral or videotaped—have been deemed admissible. *See, e.g., Alexander v. Commonwealth*, 862 S.W.2d 856, 860–61 (Ky.1993) (overruled on other grounds by *Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky.1997) (stating that a written record was appropriately introduced as an inconsistent statement)); *Porter v. Commonwealth*, 892 S.W.2d 594, 597 (Ky.1995) (determining that the introduction of a videotaped guilty plea was properly allowed as an inconsistent statement); *Shepherd v. Commonwealth*, 251 S.W.3d 309, 322 (Ky.2008) (allowing the introduction of a recorded police interview as an inconsistent statement).

The jury will now be left to strive to remember what the recorded out-of-court statement said. This impedes truth and justice because it forces the jury to simply rely upon its fallible recollection.

I digress just a bit to express a most realistic concern about how our opinion here today will affect the prosecution of domestic violence. In a large number of cases, the victim will recant. Several prosecutors in this state have established special investigative units to record the truthful and spontaneous complaint freshly made by the victim. When weeks later the victim recants, the playing and introduction of the audio tape at trial becomes critical. Just as critical is the introduction of the taped interview for the jury to re-view in the jury room. Otherwise, the perjured and misleading in-court testimony overwhelms the truth. Our opinion here today severely impedes that important process.

Most troublesome to me is the majority's opinion that, even after the admission of the videotape into evidence, it was error to allow the jury to watch it in the privacy of the jury room.

RCr 9.74 states as follows:

No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the present of the defendant (unless the defendant is being tried in absentia) and the entire jury, and in the presence of or after reasonable notice to counsel for the parties.

No information was requested by the jury after it had retired in this case. The jury only requested a means to re-view the information that had already been admitted into evidence and taken to the jury room. What is the point of introducing an exhibit into evidence and allowing the jury to take the exhibit to. the jury room unless it can be examined by the jury in the jury room? Such logic would dictate that any evidence examined in the courtroom must be left in the courtroom.

For some reason, the majority has anchored its reasoning on the theory that the videotaped statement in question was testimonial. Confessions are certainly testimonial. In many instances, a confession may be of such powerful import as to send a person to prison. It is sometimes fully written, but many times is tape recorded or videotaped. Of the thousands of cases which have been tried in this Commonwealth dealing with confessions, I challenge this Court to cite one case where a challenge was made to a transcribed confession going to the jury room. Yet, to-

day, we extend an open invitation to even undermine that ancient practice.

Writes Justice Scott for the majority: "What is still unclear, perhaps, is whether a party's recorded confession—which is obviously testimonial in nature—may be taken to the jury room upon deliberation.... We reserve judgment on this issue until it is properly before us."

The admission of written or videotaped confessions into evidence, and their review in the jury room, is a long standing practice in this Commonwealth. We do violence to, and seriously undermine, that practice here today.

Furthermore, most of the case law cited by the majority is not germane.

*McGuire* and *Malone* have no relevance as they deal with the issue of the in-court testimony of a trial witness being replayed in open court without the defendant being present.

*Mills* has no relevance because it deals with the erroneous admission of taped interviews with witnesses that had not been played at trial nor had a proper foundation been laid.

*Welch* has no relevance because it deals with the judge's ex parte answering of questions sent out by the jury during deliberations.

*Berrier* we have already discussed. It supports the trial court, not the majority's view.

The majority goes to great length to respond to this dissent. I find no solace in that effort. I would simply ask the Court to pause and consider the practical effect of our decision here today; There is no testimonial distinction between videotaped statements of witnesses, as in this case, and written statements and transcripts. So, in the future, when a written inconsistent statement is introduced into evidence,

that exhibit will remain in the courtroom. If the jury wishes to review it, they will be required to do so in open court. There, in the muted presence of the judge at the bench, with the lawyers seated at tables and the defendant returned from the jail, the jurors will silently read and pass the exhibit among themselves. Eleven jurors will be staring into space the entire time. I find this a cumbersome and unnecessary waste of time. And, yes, it "turns *Jett* on its head."

For all the foregoing reasons, I ask to be exonerated from these portions of the majority opinion. Otherwise, I concur.