# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 2, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000069-MR

MARKELLE D. WHITE                                        APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA JEAN ECKERLE, JUDGE
NO. 10-CR-002815

COMMONWEALTH OF KENTUCKY                     APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Markelle White appeals as a matter of right from a Judgment of the Jefferson Circuit Court convicting him of murder. Ky. Const. § 110(2)(b). White raises two issues on appeal. First, he argues that the trial court erred to his substantial prejudice when it allowed the Commonwealth to exercise peremptory strikes against jurors. Second, White argues that the introduction of a witness's interview with police officers was erroneous. We now find no error and affirm the Judgment of the Jefferson Circuit Court.

## RELEVANT FACTS

Appellant Markelle White was convicted by a Jefferson County jury of intentional murder for the shooting death of Lamont Wilson. At trial, the Commonwealth argued that White and co-defendant Lakendrick Charlton shot Wilson five times as he stood in the front yard of his home shortly after midnight on September 8, 2010. Various neighbors and other witnesses

testified to observing a verbal altercation between White, Charlton, and Wilson. Another neighbor testified to witnessing three men fire shots at Wilson after he advised a large group of people assembled outside of his house to turn their music down. A surveillance video at a nearby liquor store captured images of White moving towards the scene, followed by visible gunfire. The Commonwealth played a video of a police interview with a witness, Chris Mayfield, who told the detectives that White confessed to shooting Wilson. The jury deliberated and recommended a life sentence, which was then imposed by the trial court. This appeal followed.

## ANALYSIS

### I. The Commonwealth is Entitled to Peremptory Strikes.

Before voir dire, the trial court allocated thirteen peremptory strikes to the defense and nine peremptory strikes to the Commonwealth pursuant to Kentucky Rule of Criminal Procedure (RCr) 9.40. The challenges were exercised without objection. White now maintains that the trial court improperly allocated peremptory strikes to the Commonwealth, asserting that the statute establishing a prosecutorial right to peremptory strikes, Kentucky Revised Statute (KRS) 29A.290, represents an unconstitutional delegation of legislative power.

Under KRS 29A.290(2)(b), the legislature has provided that "parties shall have the right to challenge jurors," and "[t]he number of peremptory challenges shall be prescribed by the Supreme Court." The Court has promulgated RCr 9.40, our criminal rule prescribing the allocation of peremptory strikes in a

2

criminal prosecution. Under that rule, "the Commonwealth is entitled to eight (8) peremptory challenges and the defendant or defendants jointly to eight (8) peremptory challenges" in felony prosecutions, with the numbers increased to nine and thirteen respectively in cases such as this where an extra juror was seated and two defendants are being tried jointly. RCr 9.40. White maintains that no right to prosecutorial challenges existed at common law, and, therefore, the legislature cannot delegate its lawmaking authority to the Supreme Court under KRS 29A.290(2)(b).

The Commonwealth urges this Court not to consider the merits of White's claim because he failed to provide notice of the constitutional challenge to KRS 29A.290(2)(b) to the Attorney General as required by KRS 418.075.[1] We have held that the mandatory notification requirement of KRS 418.075 cannot be satisfied by filing an appellate brief. *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008). As White has failed to comply with KRS 418.075, we must decline to address the merits of White's argument.

Against this result, White urges this Court to revise our policy of strict adherence to KRS 418.075 and assess his claim on the merits. While we find this argument unpersuasive,[2] we note that this Court has recently addressed

---

[1] KRS 418.075(1) provides: "In any proceeding which involves the validity of a statute, the Attorney General of the state shall, before judgment is entered, be served with a copy of the petition, and shall be entitled to be heard, and if the ordinance or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the petition and be entitled to be heard."

[2] Citing *Commonwealth v. Johnson*, 423 S.W.3d 718 (Ky. 2014), White contends that because the Attorney General cannot intervene in "ordinary criminal prosecutions" without statutory permission to do so, the notice requirement of KRS 418.075 cannot serve as a procedural bar to a constitutional challenge of a statute. In

the propriety of prosecutorial peremptory strikes. In *Glenn v. Commonwealth*, we declared that "although KRS 29A.290(2)(b) constitutes an encroachment by the General Assembly upon the prerogatives of the judiciary, it is not inconsistent with our rules, and is, therefore, upheld as a matter of comity." 436 S.W.3d 186, 188 (2013) (*citing Commonwealth v. Reneer*, 734 S.W.2d 794, 797 (Ky. 1987) (internal quotations omitted). Citing our authority under Section 116 of the Kentucky Constitution, we affirmed RCr 9.40 substantively, and reaffirmed our constitutional power as a Court to promulgate rules of practice and procedure—including our authority to set the rules for the allocation of peremptory strikes. "We alone are the final arbiters of our rules of 'practice and procedure.'" 436 S.W.3d at 188.

So although the *Glenn* decision did not squarely address the constitutionality of KRS 29A.290(2)(b), this Court deemed the statute acceptable by way of comity. "Comity, by definition, means the judicial adoption of a rule unconstitutionally enacted by the legislature not as a matter of obligation but out of deference and respect." *Taylor v. Commonwealth*, 175 S.W.3d 68, 77 (Ky. 2005) (internal citations omitted). In extending comity, we

---

the alternative, White argues that KRS 418.075 does not apply to criminal prosecutions at all. The answer to both of White's contentions is a settled one: the Attorney General is entitled to notice under KRS 418.075 "**whenever** the constitutionality of a statute is placed in issue." *Maney v. Mary Chiles Hosp.*, 785 S.W.2d 480, 481 (Ky. 1990) (emphasis added). By its plain language, KRS 418.075 permits the Attorney General to intervene in cases when the constitutionality of a statute is put in issue. *See Brashars v. Commonwealth*, 25 S.W.3d 58 (Ky. 2000). Our recent decision in *Commonwealth v. Johnson* affirming the Attorney General's authority to enforce and investigate drug crimes in no way undermines the validity of KRS 418.075. *See* 423 S.W.3d at 725.

4

recognized that KRS 29A.290(b)(2) is consistent with our rules of practice and procedure. *Glenn*, 436 S.W.3d at 188.

White's appellate counsel ("counsel") takes great umbrage with what he characterizes as this Court's refusal to "do anything about KRS 29A.290." Lest counsel believes that he is shouting against the wind, we acknowledge that he has *repeatedly raised* iterations of this precise issue in other recent matter of right appeals.[3] Undaunted by our clear articulation of the Court's position on the statute's validity in *Glenn*, counsel proceeded to raise the same issue in three post-*Glenn* appeals (including this one).[4] These post-*Glenn* appeals follow a familiar formula: first, there is a failure to comply with the notification requirement of KRS 418.075 at the trial level; and second, there is an attack on the constitutionality of KRS 29A.290 before an appellate court. Although *Glenn* was rendered after the conclusion of White's trial,[5] counsel cites *Glenn* here, and has contemplated its import having participated as appellate counsel in that case. Moreover, counsel was effectively on notice that the Attorney

---

[3] In *Grider v. Commonwealth*, appellant's counsel argued that RCr 9.40 exceeds this Court's constitutional authority under Section 116, and that KRS 29A.290(2)(b) violates the separation of powers. 404 S.W.3d 859, 861 (Ky. 2013). The Court declined to address the issue in *Grider* because the appellant failed to notify the Attorney General pursuant to KRS 418.075(1). *See id.* Months later in *Glenn*, appellant's counsel (listed as one of three attorneys who handled appellant Glenn's appeal) again challenged the validity of RCr 9.40 for essentially the same reasons argued in *Grider.* 436 S.W.3d at 188. As with *Grider*, the Attorney General was never notified, and the Commonwealth argued that this Court could not address the constitutional challenge to RCr 9.40 in *Glenn. Id.* However, the Court concluded that no notice is required when challenging the constitutionality of a Supreme Court Rule. *Id.*

[4] *See also Adkins v. Commonwealth*, 2014 WL 2810040, No. 2013-SC-000460-MR (Ky. 2014) and *Prickett v. Commonwealth*, 427 S.W.3d 812 (Ky. Ct. App. 2013).

[5] The *Glenn* opinion was issued on November 21, 2013 and became final on February 20, 2014.

5

General must be notified before a final judgment is entered in order to preserve a constitutional challenge, and also that any attack on the validity of KRS 29A.290 would have to address *Glenn*'s extension of comity.

To see this argument raised once again conjures up images of Justice Scalia's oft-referenced ghoul who "repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried[.]"[6] As explained above, *Glenn* held that the allocation of peremptory strikes falls within the Court's procedural rulemaking authority and extended comity to KRS 29A.290(2)(b). *Id.* Therefore, to appellant's counsel's spirited charge that this Court has failed to "do anything" concerning the alleged invalidity of prosecutorial peremptory strikes, let us be clear: the Court has upheld KRS 29A.290(2)(b) under the principles of comity. We reaffirm that decision today.

## II. Police Interview With Witness Was Properly Admitted.

On the second day of trial, the Commonwealth called the victim's former neighbor, Christopher Mayfield, to testify. On direct examination, Mayfield explained that he suffered a recent brain injury that prevented him from remembering any details about Wilson's shooting, including whether he was in the vicinity at the time of the shooting, whether he spoke with police officers after the shooting, or whether he spoke to White after the shooting. On cross-examination, Mayfield reiterated that he could not remember anything about the events of September 8, 2010.

---

[6] *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (J. Scalia, dissenting).

6

Detective Chris Middleton was then called to testify about a September 9, 2010 interview with Mayfield. Before Detective Middleton took the stand, the prosecutor asked the trial court how a video of the interview should be played for the jury. White's counsel objected to the introduction of the video on two grounds: 1) that Mayfield was incompetent to testify, and; 2) that the statement was hearsay. White's counsel asserted that effective cross-examination would be impossible if the video interview was substituted for Mayfield's live testimony. In response, the Commonwealth maintained that White's competency objection was untimely given that Mayfield had testified the day prior. As to the hearsay objection, the Commonwealth argued that Mayfield's testimony that he could not remember what he had said to the officers established the proper foundation for impeachment under *McAtee v. Commonwealth*.[7] The trial court agreed with the Commonwealth that White's objection to Mayfield's competency was untimely, and further held that the Commonwealth had laid the proper foundation for impeachment. The video of Mayfield's interview was then played for the jury.

White now charges that the video violated our evidentiary rules against the introduction of hearsay statements, specifically asserting that the Commonwealth failed to lay the proper foundation for the video's introduction pursuant to KRS 613. We disagree.

As a general rule, hearsay statements, that is, out-of-court statements offered to prove the truth of the matter asserted, are inadmissible. KRE 802.

---

[7] 413 S.W.3d 608 (Ky. 2013).

Our rules against the admission of hearsay are designed in part to protect the accused from the introduction of unreliable statements that have not been submitted to the rigors of cross-examination by the accused. This guarantee is, of course, rooted in the Sixth Amendment's Confrontation Clause, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *See Crawford v. Washington*, 541 U.S. 36 (2004). One exception to our prohibition against hearsay statements concerns the prior inconsistent statements of a witness, as provided in KRE 801A as follows:

> (a) Prior statements of witnesses. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is:
> (1) Inconsistent with the declarant's testimony;
> (2) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; or
> (3) One of identification of a person made after perceiving the person.

In our recent *McAtee v. Commonwealth* decision, we were asked to determine whether prior inconsistent statements can be admitted to impeach a witness who claims to not remember making the statement. 413 S.W.3d at 618. The factual scenario in *McAtee* is very similar to what we have before us in the case at bar. In *McAtee*, the trial court admitted a witness statement given to police officers—a statement that the witness later testified to having no memory of making. *Id.* at 617-18. Relying on the Supreme Court's seminal

8

*Crawford v. Washington* decision, we reiterated that the Confrontation Clause does not constrain the use of a prior inconsistent statement when the "declarant is present at trial to defend or explain it." *Id.* (*quoting Crawford*, 541 U.S. at 59 n.9). Going further, *McAtee* applied *United States v. Owens*, 484 U.S. 554 (1988), where the Supreme Court held that a defendant is not denied the Sixth Amendment right to cross-examine a witness simply because that witness claims memory loss.[8] Reading *Crawford* alongside *Owens*, we concluded that "the Confrontation Clause is not implicated by a witness claiming memory loss if he or she takes the stand at trial and is subject cross-examination." *McAtee* at 619. Because the forgetful witness in *McAtee* was subjected to cross-examination about the prior statements, we found no error. *Id.*

As a threshold matter, we agree that defense counsel's objection at trial was sufficient to preserve the issue for appellate review. Defense counsel's hearsay objection concerned White's right to cross-examine Mayfield, referring to White's right to confrontation. The Commonwealth cited *McAtee* as controlling. Under *McAtee*, as explained *supra*, a prior inconsistent statement used to impeach a witness who claims to suffer from memory loss *does not* implicate a defendant's right to confrontation. 413 S.W.3d at 618. In order to introduce a prior inconsistent statement, the proponent of the statement must

---

[8] "If the ability to inquire into these matters suffices to establish the constitutionally requisite opportunity for cross-examination when a witness testifies as to his current belief, the basis for which he cannot recall, we see no reason why it should not suffice when the [witness's] past belief is introduced and he is unable to recollect the reason for that past belief." *Owens*, 484 U.S. at 559.

lay the proper foundation pursuant to our rules of evidence. KRE 613. The issue of an improper foundation here (that is, where a declarant has claimed memory loss) is so closely intertwined with the confrontation/hearsay objection that we are satisfied that the trial court properly considered the question before making its ruling so as to preserve the issue for our review.

As for the introduction of the statement to police, we find no error. In his taped interview, Mayfield stated that White confessed to shooting Wilson, claiming that Wilson tried to punch him, prompting White to shoot him. As noted previously, Mayfield testified at trial that he had no knowledge of the shooting, nor did he recall giving a statement to detectives.[9] That testimony was subjected to examination. Therefore, Mayfield's statements constituted prior inconsistent statements because they were "[i]nconsistent with the [his] testimony," and he was "examined concerning the statement[.]" KRE 801A(a). Under the principle espoused in *McAtee*, the Commonwealth was entitled to introduce any prior inconsistent statements made by Mayfield, so long as it first established the proper foundation under KRE 613.

A party seeking to admit a prior inconsistent statement must first "[inquire of the declarant] concerning [the statement], with the circumstances of time, place, and persons present, as correctly as the examining party can

___

[9] White argues that no KRE 804 exception applies here. Exceptions to our prohibition against out-of-court statements include some instances where a witness is unavailable to testify, such as when a witness "[t]estifies to a lack of memory of the subject matter of the declarant's statement." KRE 804(3). Mayfield undoubtedly qualifies as an unavailable declarant. However, the application of the KRE 804(b) (hearsay exceptions when the declarant is unavailable) is immaterial, as our prior inconsistent statement rule applies whether or not the declarant is available. KRE 801A(a)(1).

10

present them[.]" KRE 613. White now insists that the Commonwealth failed to meet its burden under KRS 613, arguing that the Commonwealth was required to lay a foundation for each utterance made during Mayfield's police interview. To the contrary, we agree that under *McAtee*, the Commonwealth established a proper foundation for the introduction of the police interview. The Commonwealth asked Mayfield if he remembered giving a statement to Detective Middleton; Mayfield testified that he did not. When asked about specific statements, Mayfield replied that he could not recall making *any statements*. Mayfield's testimony was unequivocal that he would be unable to answer *any questions* concerning Wilson's shooting or his interview with Detective Middleton.

It was abundantly clear that nothing more could have been gained by questioning Mayfield as to the specifics of his interview with police. Rather, because Mayfield was available for cross-examination at trial, at which time he claimed to not recall giving a statement to the police, the Commonwealth was entitled to impeach him with the video of the police interview. *McAtee*, 413 S.W.3d at 619. As such, we agree that the trial court did not err in allowing the Commonwealth to introduce Mayfield's police interview.

## CONCLUSION

For the reasons stated herein, we affirm the judgment and sentence of the Jefferson Circuit Court.

All sitting. All concur.

11

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Louisville Metro Public Defender

James David Niehaus
Deputy Appellate Defender


COUNSEL FOR APPELLEE:

Jack Conway, Attorney General of Kentucky

Gregory C. Fuchs
Assistant Attorney General