James BURKHART, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2002–SC–0405–MR.

Supreme Court of Kentucky.

Oct. 23, 2003.

As Modified on Denial of Rehearing
Feb. 19, 2004.

Shelly R. Fears, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General, Ian G. Sonego, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

In the early morning hours of May 21, 2001, a Citgo Redi–Mart employee arrived at work only to discover the front doors of the business had been smashed, with broken glass strewn throughout the entrance. Prompt review of the store's video surveillance tape by the employee and a local deputy sheriff revealed that the damage was caused by what appeared to be an older model van crashing through the door. Some thirty minutes later, the sheriff's department stopped a van of matching description, driven by Appellant. The officers observed scratches and dents on the front of the van, with shards of glass embedded in the grill. In addition, paint left by the intruding vehicle on the store's doorframe closely matched the color of Appellant's van. The officers' written report notes that Appellant smelled of alcohol, though more definitive proof of intoxication is lacking, since Appellant refused to take the standard field sobriety and breathalyzer tests, nor would he provide a blood sample for drug analysis.

Having heard the evidence, a jury of the Laurel Circuit Court found Appellant guilty of first degree criminal mischief, owning or operating a motor vehicle without insurance, and leaving the scene of an accident, but not guilty of operating a vehicle while under the influence of intoxicants. The jury fixed the combined sentences for theses offenses at one year and ten days. However, because the jury also found Appellant to be a persistent felony offender in the first degree, they enhanced his sentence to twenty years. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Appellant presents one issue for our review: was it error for the trial court to replay the Redi–Mart surveillance video, *in slow motion*, for the jury during guilt phase deliberations? During the prosecution's case-in-chief, this videotape was shown to the jury at regular speed only, primarily because neither the prosecutor nor the bailiff knew how to operate the tape player at a slower speed. Later, in the midst of deliberations, the jury requested an opportunity to view the store's surveillance tape once again. Acquiescing to this request, the trial judge replayed the video for the jurors in open court. This time, however, the judge operated the video player controls himself, and over defense counsel objection, he replayed the tape in slow motion.

Appellant claims the trial judge abused his discretion, and risked placing undue emphasis on the surveillance video, by playing the tape for deliberating jurors in a manner different from the Commonwealth's presentation of this evidence at trial. Appellant's complaint not only encompasses the slow motion replay of the video, but also the fact that jurors were allowed to sit much closer to the screen than they were during the prosecution's case. As a final point, Appellant suggests that the trial judge's personal involvement in slowing the videotape down may have conveyed to the jury a judicial bias in favor of the Commonwealth.

The few jurisdictions that have addressed the propriety of allowing juries to view videotapes in slow motion have generally found no error with this practice. *See Barnett v. State*, 204 Ga.App. 588, 420 S.E.2d 96 (1992); *Brown v. State*, 201 Ga. App. 510, 411 S.E.2d 366 (1991); *State v. Brewington*, 343 N.C. 448, 471 S.E.2d 398 (1996). *But see Commonwealth v. Hindi*, 429 Pa.Super. 169, 631 A.2d 1341 (1992) (not an abuse of discretion to prohibit slow motion replay of a videotape when enlarged still photographs taken from the video are admitted at trial). In *Brown v. State, supra*, the Georgia Court of Appeals

reasoned that the slow motion review of a surveillance videotape during juror deliberations did not alter or enhance the recording "so as to present 'different and distorted images' from what was admitted in evidence during the trial." *Id.* at 366–67.

We find the reasoning in *Brown* compelling. Nonetheless, Appellant's argument does not hinge solely on a claim that the slow motion replay somehow modified the video images. Rather, Appellant asserts that the act of slowing the tape down allowed the deliberating jurors to place "undue emphasis" on this exhibit as compared to other evidence presented at trial.

█ Typically, "undue emphasis" claims involve juror review of exhibits which are "testimonial" in nature, such as a witness statement or depositions. *See Berrier v. Bizer*, Ky., 57 S.W.3d 271, 277 (2001); *Mills v. Commonwealth*, Ky., 44 S.W.3d 366, 372 (2001); *Williams v. Watson*, 207 Ky. 256, 268 S.W. 1067 (1925); *Louisville, H. & St. L. Ry. Co. v. Morgan*, 110 Ky. 740, 742–43, 62 S.W. 736, 737 (1901); *Bellamy v. Pathak*, Ky.App., 869 S.W.2d 45, 47 (1993). In *Berrier*, for example, we ruled a trial court erred when it allowed deliberating jurors to take witness interview summaries with them into the jury room. *Berrier, supra*, at 277. With such exhibits, there is concern that jurors may accord great weight to testimony re-examined during deliberations, as compared to the "live" evidence heard at trial, because the unreviewed testimony "can only be conjured up by memory." *Wright v. Premier Elkhorn Coal Co.*, Ky.App., 16 S.W.3d 570, 572 (1999).

█ In contrast, no such concerns attend juror review of non-testimonial exhibits during deliberations. "Nontestimonial exhibits... such as contract documents or recordings of criminal acts which are verbal in nature, are generally allowed to go

into the deliberations." *Chambers v. State*, 726 P.2d 1269, 1275 (Wyo.1986), *quoting* 3 D. Louisell & C. Mueller, Federal Evidence, § 390, at 684 (1979). On this basis, numerous courts have allowed deliberating jurors to review audio and visual recordings of a non-testimonial character, often within the confines of the jury room. *See People v. Douglas*, 66 Cal.App.3d 998, 136 Cal.Rptr. 358 (1977); *People v. Aponte*, 867 P.2d 183 (Colo.App.1993); *State v. Poulos*, 230 Kan. 512, 639 P.2d 477 (1982); *State v. Halvorson*, 346 N.W.2d 704 (N.D.1984); *Yung v. State*, 906 P.2d 1028 (Wyo.1995); *Stephens v. State*, 774 P.2d 60 (Wyo.1989); *State v. Castellanos*, 132 Wash.2d 94, 935 P.2d 1353 (1997).

Ostensibly, the trial court, having duly received the surveillance video into evidence without objection, could have submitted this exhibit to the jury for its private viewing in the jury room. RCr 9.72; *See also Gorman v. Hunt*, Ky., 19 S.W.3d 662, 669 n. 33 (2000) (noting that the "prevailing practice in trial courts in civil cases is not only to permit, but, without a request from the jury, to send exhibits back to the jury room when the jury begins its deliberations").

Instead, the trial judge chose to review the tape under the more controlled conditions of open court, minimizing any risk of undue emphasis. We therefore find no abuse of discretion in the slow motion replay or in letting the jurors assemble closely around the video monitor. Both acts merely allowed more careful observation of the events depicted on the surveillance video, and were but an extension of what the jury could have done for itself within the confines of the jury room.

█ Finally, in regard to Appellant's claim that the trial judge's operation of the VCR evinced a bias for the prosecution, we find no support for this allegation in the

record. From the narrative statement describing events surrounding the videotape playback, we are unable to discern whether the deliberating jurors or the prosecutor requested the slow motion replay, or if instead the judge, *sua sponte,* determined to operate the VCR controls himself.

 Of course, the requirement of judicial impartiality is of the highest order. "[G]reat care must be taken by a judge to 'always be calmly judicial, dispassionate and impartial. He should sedulously avoid all appearances of advocacy as to those questions which are ultimately to be submitted to the jury.'" *United States v. Hickman,* 592 F.2d 931, 933 (6th Cir.1979), *quoting Frantz v. United States,* 62 F.2d 737, 739 (6th Cir.1933). *See also* Canon 3, Kentucky Code of Judicial Conduct (providing that a "judge shall perform the duties of judicial office impartially and diligently"). Lacking any definitive evidence of judicial bias in the present matter, we find no error in the trial judge's actions.

The conviction and the judgment of the Laurel Circuit Court are affirmed.

All concur.