Timothy F. GRAY, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2014–CA–000813–MR

Court of Appeals of Kentucky.

RENDERED: DECEMBER 18, 2015; 10:00 A.M.

BRIEF FOR APPELLANT: Gene Lewter Frankfort, Kentucky.

BRIEF FOR APPELLEE: Jack Conway Attorney General of Kentucky, William Robert Long, Jr., Assistant Attorney General, Frankfort, Kentucky.

BEFORE: COMBS, DIXON, AND D. LAMBERT, JUDGES.

*OPINION*

COMBS, JUDGE:

Timothy F. Gray appeals from a final judgment and sentence of the Bell Circuit Court convicting him of theft by unlawful taking. He received a sentence of five-years' imprisonment, which was enhanced to fifteen years by virtue of his status as a persistent felony offender in the first degree (PFO I). After our review, we affirm.

On the evening of June 2, 2013, a large quantity of copper wire was stolen from Hinkle Contracting in Middlesboro. Gray was arrested for the crime on July 23, 2013. On September 18, 2013, the grand jury charged him with one count of theft by unlawful taking (over $500.00) (Kentucky Revised Statute[s] (KRS) 514.030) and one count of being a persistent felony offender (KRS 532.080). He was arraigned on October 18, 2013, and he pleaded not guilty.

His trial began on February 27, 2014. The evidence included testimony from a security guard who was working at a nearby business. The guard reported that he observed Gray on the premises of Hinkle Contracting and that Gray was loading copper wire into the trunk of a car. The guard indicated that when he approached

him, Gray reported that he had permission to take the wire. The guard could not tell how much wire had been loaded into the trunk.

A manager at Hinkle Contracting testified that at least 500 pounds of copper wire had been removed from the facility on the evening of June 2, 2013. He estimated the value of the missing copper wire to be $4,000.00. He expressly denied having given Gray permission to take the copper wire from the premises.

The jury convicted Gray on both charges. The court's judgment and sentence were entered on March 20, 2014. This appeal followed.

■ Gray presents three arguments for our review. First, he argues that the trial court erred by failing to give an instruction on the lesser-included offense of theft by unlawful taking (under $500.00). We disagree.

■ Gray contends that the jury might have reasonably deduced from the evidence that the value of the copper was in dispute since the security guard could not indicate precisely how much had been loaded into the trunk of the car. However, as the Commonwealth explains, "the only evidence regarding the value of the stolen wire indicated that the wire, was worth far in excess of $500.00." There was no reasonable inference to be drawn from the testimony that would have supported a finding that the value of the copper wire removed from the premises was valued at less than $500.00. In fact, the defense never contested the value of the copper wire stolen from the victim. Rather, the defense strategy consisted of disputing the reliability of the security guard's identification of Gray.

"[A] lesser-included offense instruction is available only when supported by the evidence[,]" and "[t]he jury is required to decide a criminal case on the evidence as presented or reasonably deducible therefrom . . . ." *White v. Commonwealth,* 178 S.W.3d 470, 490–91 (Ky.2005) (citing *Thompkins v. Commonwealth,* 54 S.W.3d 147, 151 (Ky.2001)). There was no evidence from which the jury could find that the stolen copper wire was valued at less than $500.00. Since the evidence regarding the value of the copper wire was uncontroverted, either an acquittal or a conviction for the charged offense was required. Because there was no reasonable basis upon which to conclude that the value of the copper wire taken from Hinkle Contracting was less than $500.00, the trial court did not err by denying Gray's request to instruct the jury on the lesser-included offense of theft by unlawful taking (under $500.00).

■ Gray next contends that the trial court erred by providing the jury with a deficient *Allen* charge.[1] He acknowledges that the alleged error was not properly preserved for review, but he asks the court to consider it on the basis of our palpable error rule, Kentucky Rule[s] of Criminal Procedure (RCr) 10.26.

■ The provisions of RCr 10.26 authorize us to consider a "palpable error" even where the error was insufficiently preserved for review if it affects the substantial rights of a party. An error is "palpable" where it is plain and obvious. *Brewer v. Commonwealth,* 206 S.W.3d 343 (Ky.2006). Relief may be granted only if we determine that manifest injustice has resulted from the error. In order to prove "manifest injustice," we must be persuaded that "upon a consideration of the whole case," a substantial possibility exists "that

1. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

the result [of the trial] would have been different but for the alleged error." *Ramsey v. Commonwealth*, 157 S.W.3d 194, 199 (Ky.2005).

After closing arguments and a reasonable period of deliberation, the jury informed the bailiff that it was having trouble reaching a verdict. The court informed the parties that it would bring the jury members back into the courtroom and advise them to continue to deliberate. Defense counsel did not object.

When the jury was back in the box, the court asked if the bailiff's report was correct. One of the jurors responded that it was. The court instructed the jury as follows:

> ... go back and deliberate further and see if we can't come to a resolution on this and if you decide that you're just hopelessly deadlocked, we'll talk about that. But I'm going to ask you to give it some more time and a little discussion and see if you guys can reach a verdict in this matter.

Nearly an hour and one-half later, the jury came back with a verdict finding Gray guilty of the charged offense. Gray contends that the trial court's interactions and communications with the jury during its deliberations warrant a reversal of the convictions.

RCr 9.57(1) sets out Kentucky's charge for deadlocked juries pursuant to the Court's holding in *Allen v. United States, supra*. That rule provides as follows:

> (1) If a jury reports to a court that is unable to reach a verdict and the court determines further deliberations may be useful, the court shall not give any instruction regarding the desirability of reaching a verdict other than one which contains only the following elements:
>
> (a) in order to return a verdict, each juror must agree to that verdict;

> (b) jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>
> (c) each juror must decide the case, but only after an impartial consideration of the evidence with the other jurors;
>
> (d) in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change his or her opinion if convinced it is erroneous; and
>
> (e) no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of other jurors, or for the mere purpose of returning a verdict.

Gray contends that reversal is necessary since the trial court violated the provisions of RCr 9.57(1) by "winging" it with the jury. He argues that the court's instruction coerced a verdict. We disagree.

The language of the rule indicates that the five elements of RCr 9.57(1) are required only where a trial court proposes to give "any instruction regarding the desirability of reaching a verdict." If the trial court decides to give such an instruction, these elements are mandatory and exclusive—although they need not be recited verbatim. *Commonwealth v. Mitchell*, 943 S.W.2d 625 (Ky.1997).

However, upon learning that a jury is deadlocked and determining that further deliberations may be useful, a trial court is not *required* to instruct the jury as to the desirability of reaching a verdict. Rather than instructing the jury regarding the desirability of a verdict, the trial court in this case merely instructed the jurors to "go back and deliberate further and see if we can't come to a resolution on this and if you decide that you're just hopelessly deadlocked, we'll talk about that." When a trial court makes a statement that does

not discuss the desirability of a verdict, the issue is not whether the statement complied with the provisions of RCr 9.57(1)—but whether the statement was coercive. *Mills v. Commonwealth*, 996 S.W.2d 473, 493 (Ky.1999).

■ We must focus primarily upon the language of the court's instruction, bearing in mind that "[t]he ultimate test of coercion is whether the instruction actually forces an agreement on a verdict or whether it merely forces deliberation which results in an agreement." *Abbott v. Commonwealth*, 352 S.W.2d 552, 554 (Ky.1961). In this case, the trial court instructed the jury "to give it some more time and a little discussion and see if you guys can reach a verdict in this matter." The trial court's statement did not include any indicia of coercion. It merely encouraged further deliberation that ultimately resulted in an agreement among the members of the jury. *See Mitchell*, 943 S.W.2d at 628; *Abbott*, 352 S.W.2d at 554. *See also Lewis v. Commonwealth*, 463 S.W.2d 137, 138–39 (Ky.1970) (holding that no coercion occurred where jury announced inability to reach verdict after one hour and fifteen minutes of deliberations and trial court instructed jury to "go back and try to reach a verdict"). Since Gray was not deprived of a substantial right and manifest injustice did not occur, there was no reversible error. RCr 10.26.

■ Finally, Gray contends that he was denied a fundamentally fair trial by the Commonwealth's failure to prove the dates of his prior felony convictions and by its introduction of the indictments underlying those convictions during the penalty phase of the proceedings. Again, we disagree.

During the penalty phase of the criminal proceedings against Gray, the Commonwealth called a representative of the Bell County probation and parole office who testified that Gray's birthday was August 19, 1968. According to Gray, the representative explained to the jury that he had a felony conviction for theft by unlawful taking (over $500) on November 1, 2011, for which he received a five-year sentence; a conviction for receiving stolen property over $500.00 in 2010; and a conviction for fleeing and evading for which he was sentenced to imprisonment of three and one-half years. She confirmed that Gray was over the age of 18 at the time of these convictions and that he had received sentences of more than one year for each of them. She also testified that Gray was on active parole supervision at the time of the offense against Hinkle Contracting. The Commonwealth then introduced twenty-seven pages of Gray's criminal record.

Gray contends that he was deprived of a fair trial by the Commonwealth's failure to prove that he committed the second felony after he was convicted of the first felony and that he was convicted of the second felony before he committed the present felony. He admits that the alleged error is wholly unpreserved. Again, we may address an alleged error that was not properly preserved for review only if it is palpable and affects the substantial rights of a party. RCr 10.26. We may grant relief only where we find that manifest injustice has resulted from the error.

To establish that Gray's sentence was eligible for enhancement, our PFO I statute, KRS 532.080, requires the Commonwealth to establish beyond a reasonable doubt all of the following factors: (a) that Gray was more than twenty-one years of age; (b) that he stood convicted of a new felony offense; (c) that he was previously convicted of two other felony offenses for each of which he was sentenced to a term of imprisonment of at least one year; and (d) that he was over eighteen years of age when he committed the prior felony of-

fenses. Pursuant to the provisions of KRS 532.080(3)(c), and relevant to the facts of this case, the Commonwealth was further required to prove beyond a reasonable doubt that Gray was on parole on a previous felony conviction at the time of the commission of the felony for which he now stood convicted.

The Commonwealth contends that Gray's allegation of error is frivolous since the date of each of his prior felony offenses and his age at the time of each offense are printed prominently on the certified judgments admitted into evidence. In *Martin v. Commonwealth*, 13 S.W.3d 232 (Ky. 1999), the Supreme Court of Kentucky held that direct proof of a particular PFO element was not required if there was evidence from which a jury could reasonably infer the existence of that element.

Given the evidence before the jury and the reasonable inferences to be drawn from it, we conclude that all of the essential elements required for the PFO conviction were adequately proven. Gray did not suffer any manifest injustice requiring a remand on the penalty phase of the proceedings.

Consequently, we affirm the judgment of conviction.

ALL CONCUR.