RENDERED: MARCH 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0019-MR

TRINO JOSE ARREOLA ORTEGA                    APPELLANT

APPEAL FROM JESSAMINE CIRCUIT COURT
v.          HONORABLE C. HUNTER DAUGHERTY, JUDGE
ACTION NO. 19-CR-00203

COMMONWEALTH OF KENTUCKY                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

GOODWINE, JUDGE: Trino Jose Arreola Ortega ("Ortega") appeals from a

Jessamine Circuit Court judgment and sentence after a jury convicted him of one

count of sexual abuse in the first degree (victim under twelve years of age).[1] He

---

[1] Kentucky Revised Statute ("KRS") 510.110, a Class C felony.

was sentenced to five years in prison. After carefully reviewing the record and finding no error, we affirm.

## BACKGROUND

A Jessamine County Grand Jury indicted Ortega on charges of rape, first-degree (victim under twelve years of age); sexual abuse, first-degree (victim under twelve years of age); and sexual abuse, first-degree (victim over the age of twelve but under the age of sixteen) based on allegations from D.H.G., Ortega's niece by marriage.

D.H.G. testified that in 2011 or 2012, when she was five or six years old, she visited her cousins[2] frequently at their house for sleepovers a few times a month. She testified that on one such visit, Ortega raped her. There was no physical injury, bleeding, or trauma.

D.H.G. testified that the rape happened only once but that on multiple occasions, she would wake during the night to Ortega touching her. Sometimes, Ortega touched her on top of her clothes, but other times, he put his hands inside her underwear. D.H.G. testified that the sexual abuse began after the rape, within a few months but not more than a year, although she could not be more specific. She testified that the sexual abuse lasted until she was twelve or thirteen years old. D.H.G. disclosed Ortega's abuse in 2019, about a year or two after the abuse

---

[2] Ortega and his wife Veronica's children.

ended. The Commonwealth called four additional witnesses to testify. Their testimony is not at issue on appeal.

Ortega testified in his defense and denied D.H.G.'s allegations of rape and sexual abuse. He did not know why she would make up the allegations. No other witnesses testified on Ortega's behalf.

After closing arguments, the trial court explained the deliberation process to the jury. Specifically, as to cell phone use, the trial court said that while "[s]ome judges take your cell phones away[,] I'm not going to do that. You're not kids." (Video Record ("VR") 7/19/22; 11:04:40.) But the trial court admonished that the jurors were prohibited from "us[ing] them unless in the presence of the bailiff" for purposes of planning logistics with family members. *Id.* After the admonition, jurors retired to the jury room and began deliberations. The jurors retained their cell phones without objection from either party.

At approximately 3:35 p.m., the jury requested D.H.G.'s testimony, which the parties agreed to play back in the courtroom. While rewatching the video, the Commonwealth notified the trial court that some recordings were skipped. The video was rewound, but too far back, and a portion of D.H.G.'s testimony was played again. The replayed testimony detailed Ortega sexually abusing D.H.G., including where she stated that he would sometimes touch her outside and inside her clothes.

-3-

Defense counsel timely objected and moved for a mistrial, arguing poor sound quality of the video playback, concerns about the replay issue, and his belief that it presented an unbalanced second viewing of D.H.G.'s testimony while unduly emphasizing portions of her statements. The trial court overruled the motion for a mistrial and allowed deliberations to continue.

At approximately 5:00 p.m., the jury submitted a question about logistics, asking if they were expected to finish deliberations that day or if they could continue the next day. Approximately two hours later, the jury asked to go home. With the parties' agreement, the trial court brought the jury back into open court and asked the foreperson if the jurors were deadlocked or wanted to leave for another reason.

The foreperson told the trial court and attorneys that the jury had reached a verdict on one count and was close to reaching a verdict on the other two counts but wanted to break for the evening. After reading the *Allen*[3] charge, the trial court told the foreperson that they would see how deliberations were going in another thirty minutes but did not put a limit on that timeframe.

Approximately twenty minutes later, the jury told the trial court that it had reached a verdict on Count 1 but not Counts 2 and 3. Thirty minutes later, the jury unanimously reached a verdict on all three counts, convicting Ortega of sexual

---

[3] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

abuse in the first degree (victim under the age of twelve) (Count 2) and acquitting Ortega of rape (Count 1) and sexual abuse in the first degree (victim over the age of twelve but less than sixteen (Count 3).

Before sentencing, Ortega filed a timely motion for a new trial on Counts 2 and 3.[4]  Following a hearing, the trial court denied the motion and sentenced Ortega to five years in prison per the jury's recommendation.  This appeal followed.

Additional facts will be discussed in the analysis.

## STANDARD OF REVIEW

The trial court's decision to grant a mistrial is within its sound discretion, and it will not be disturbed absent an abuse of discretion.  *Shemwell v. Commonwealth*, 294 S.W.3d 430, 437 (Ky. 2009) (citations omitted).  Ortega has requested that we review his unpreserved claims for palpable error under RCr[5] 10.26.  Under palpable error review, a defendant must show "the probability of a different result . . . so fundamental as to threaten his entitlement to due process of law."  *Huddleston v. Commonwealth*, 542 S.W.3d 237, 245 (Ky. 2018) (citation omitted).  We must determine whether the alleged defect "is so

---

[4] It is unclear why Ortega requested a new trial on Count 3 when the jury returned a verdict of not guilty on that count (Record ("R.") at 88), and the trial court subsequently entered a judgment of acquittal on Count 3.  R. at 121.

[5] Kentucky Rules of Criminal Procedure.

manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Id.* (citation omitted).

## ANALYSIS

On appeal, Ortega argues the trial court erred by (1) permitting jurors to have access to their cell phones during deliberations, (2) allowing jury separation, (3) denying his motion for a mistrial, (4) utilizing an improper *Allen* charge, and (5) cumulative error. We address each in turn.

First, Ortega argues that the trial court erred by permitting jurors to keep their cell phones during deliberations. Ortega did not object before the jury began deliberations, and he acknowledges this oversight in his brief. Had Ortega objected to the trial court allowing jurors to access their cell phones, the standard of review would be an abuse of discretion. *Winstead v. Commonwealth*, 327 S.W.3d 386, 402 (Ky. 2010). However, since the issue is not properly preserved, it is subject to palpable error. *Elery v. Commonwealth*, 368 S.W.3d 78, 97-98 (Ky. 2012) (internal quotation marks and citations omitted) ("[A]n appellant preserves for appellate review only those issues fairly brought to the attention of the trial court. . . . A new theory of error cannot be raised for the first time on appeal.").

Following closing arguments and before releasing the jury to begin deliberations, the trial court said, "While some judges take your cell phones away[,] I'm not going to do that. You're not kids." (VR 7/19/22; 11:04:40.) But

the trial court admonished the jurors that they were prohibited from "us[ing] them unless in the presence of the bailiff" for purposes of planning logistics with family members. *Id.*

First, we acknowledge that the best practice for trial judges is to refrain from allowing jurors to retain electronic communication devices during deliberations, including but not limited to cell phones. Allowing jurors to keep such devices during deliberations only invites questions and concerns about possible juror impropriety, even where none exists. Although it has criticized the practice, our Supreme Court has not adopted a bright-line rule against jurors retaining cell phones during deliberations. *Arnett v. Commonwealth*, 470 S.W.2d 834, 837 (Ky. 1971). This issue could have been addressed had Ortega objected to the trial court permitting the jurors to retain their cell phones during deliberations.

Ortega argues that permitting jurors to use their cell phones in the bailiff's presence but outside other jurors resulted in impermissible jury separation. Ortega claims this issue was properly preserved under his motion for a new trial. He explains that he only became aware that jurors could use their cell phones to call or text family members about scheduling when preparing for sentencing. Once he became aware of it, he immediately supplemented his motion for a new trial to include the jury separation issue. After that, the trial court scheduled the motion for an evidentiary hearing.

Generally, raising an issue for the first time in a post-judgment motion for a new trial is insufficient to preserve an error for appellate review. *Smith v. Commonwealth*, 366 S.W.2d 902 (Ky. 1962). In *Smith*, our then highest court held that in cases other than death penalty cases, arguing improper jury separation for the first time in a motion for a new trial is too late for proper preservation. Under palpable review, Ortega must show that there was an error that was "clear or plain under current law" and that it affected his substantial rights. *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009); RCr. 10.26.

However, Ortega's claim presents a rather unique issue regarding which standard of review we should undertake. Assuming, *arguendo*, that Ortega brought his concerns to the trial court as soon as practicable once he became aware of the problem, his claims still fail even under the abuse of discretion standard.

Courts in Kentucky have refused to grant a new trial due to improper jury separation if the bailiff or another supervising official was present, and there is a showing by the Commonwealth that no outside person exerted improper influence on the juror. *Davenport v. Commonwealth*, 285 Ky. 628, 148 S.W.2d 1054, 1062 (Ky. 1941). In this case, Deputy Upton positioned himself where he could monitor jurors making calls outside of the jury room and jurors inside the jury room. He could hear whether the jurors on the phone discussed the case. Deputy Upton testified that he could observe all jury members simultaneously.

(VR 11/22/22; 1:28.) However, Deputy Upton testified that some jurors used text messages and that he did not review said text messages.

During the evidentiary hearing on his motion for a new trial, the trial court addressed Ortega's concerns. The trial court summarized Deputy Upton's testimony and indicated that Deputy Upton was following his instructions. He did not believe the witness who testified that one or more jurors exited the jury room or room adjacent to the jury room and used their cell phones outside the presence of Deputy Upton.

Concerning the text messages, the trial court said, "I guess we can bring all the jurors in here who used text and put them under oath and have them testify about whether they talked to anybody about the case. . . if you all want to complete the record, I guess we could get the jurors in here. . . ." (VR 11/22/23; 2:23:09.) Ortega did not take the trial court up on its offer, nor did he object to the trial court not bringing the jurors in to testify regarding the use of text messages.

Ortega's rights were not substantially affected. There was no evidence that the jurors' use of cell phones swayed their decision. The trial court admonished the jury several times against using cell phones, telling them that "you cannot use [cell phones] unless in the presence of the bailiff." (VR 7/19/22; 11:04-40.) Deputy Upton testified that all phone calls he overheard related to childcare or alerting family members that they were unsure when they would be home. (VR

11/22/22; 1:30:30.) Given the jurors' limited use of their cell phones to notify family members of scheduling issues, we cannot conclude that Ortega's rights were affected. The trial court did not abuse its discretion. Concerning the text messages, not having objected to the trial court's ruling, Ortega waived this issue. Under palpable review, there is no manifest injustice. Ortega was acquitted of the most serious allegation and received the minimum sentence for the count of which he was convicted.

Next, Ortega argues that the technical issues during the requested replay of D.H.G.'s testimony placed an undue emphasis on her testimony and resulted in an unfair trial. Ortega asked the trial court for a mistrial because of the "poor sound and replay" that allegedly "taint[ed] . . . the trial." (VR 7/19/22; 6:05:30.) "The decision to grant a mistrial is within the sound discretion of the trial court and such a ruling will not be disturbed absent an abuse of discretion." *Shemwell*, 294 S.W.3d at 437 (citations omitted).

In exercising discretion to replay testimony for the jury, a trial court must balance the risk of emphasizing testimony against the need to prevent juror confusion. *Baze v. Commonwealth,* 965 S.W.2d 817, 825 (Ky. 1997). As such, courts exercise caution when allowing juries to reexamine testimony during deliberations because there is some concern that jurors may give greater weight to testimony they review or hear again. *Wright v. Premier Elkhorn Coal Co.*, 16

-10-

S.W.3d 570, 572 (Ky. App. 1999). Ultimately, there is an aversion to unduly emphasizing testimony or evidence. *McAtee v. Commonwealth*, 413 S.W.3d 608, 628-29 (Ky. 2013).

It was permissible for the jury to review D.H.G.'s testimony. RCr 9.74 ("No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant . . . and the entire jury[.]"). Nothing in the record supports Ortega's claim that the testimony replay – and accompanying video glitches – resulted in an undue emphasis on D.H.G.'s testimony.

The jury watched the testimony between 4:30 p.m. and 4:39 p.m. and then deliberated over two more hours and acquitted him of the most serious allegation, rape in the first degree, and the least severe allegation of sexual abuse in the first degree (victim older than the age of twelve but less than the age of sixteen). The jury recommended a minimum sentence of five years on the more serious allegation of sexual abuse in the first degree (victim under the age of twelve).

The Kentucky Supreme Court has held that the skipping and rewinding of a recording was harmless. *Burkhart v. Commonwealth*, 125 S.W.3d 848, 850 (Ky. 2003), *as modified on denial of reh'g* (Feb. 19, 2004). In *Burkhart*, the appellant challenged the video playback of a surveillance video in slow motion

-11-

during deliberations, arguing that it was unduly prejudicial. *Id.* at 849. The Supreme Court found no definitive evidence that the slow-motion replay of the tape prejudiced the appellant. *Id.* at 851. The slow-motion replay was not done on purpose or for any emphasis. *Id.* Likewise, there was no evidence that the Commonwealth or the trial court deliberately caused D.H.G.'s testimony to skip. Instead, like *Burkhart*, it was a technical mistake. Without an intentional emphasis and actual prejudice, Ortega's claim fails. The trial court did not abuse its discretion in denying the motion for a mistrial because the technical malfunction did not warrant it.

Next, Ortega argues that the trial court's *Allen* charge improperly forced an agreement among the jurors. This argument was not properly preserved and will be reviewed for palpable error. Ortega does not argue that the trial court erred in giving the *Allen* charge or that the language used was problematic. Instead, the crux of his argument is that the *Allen* charge pressured the jury to render a verdict. Ortega supports this claim by pointing to the amount of time that lapsed from the issuance of the *Allen* charge to the jury reaching a verdict.

The lapse between an alleged coercive *Allen* charge and verdict can be considered, although it is undoubtedly not outcome-determinative. *Bell v. Commonwealth*, 245, S.W.3d 738 (Ky. 2008), *overruled on other grounds by Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008). "The time lapse between the

-12-

alleged coercive comment and the verdict may be relevant as part of the totality of circumstances, though not decisive." *Id.* at 742. Instead, it is a totality of the circumstances that matter, including the language of the trial court and whether taken with the time between the *Allen* charge and the decision, the trial court's language forced, rather than encouraged, a verdict. The jury deliberated fifty minutes after the *Allen* charge and until the submission of the verdict form for all three counts. Ortega points to no evidence in the record to argue that this timeframe demonstrated coerciveness.

The trial court read an *Allen* charge[6] to the jury, asking if they would "give it another thirty minutes or so." (VR 7/19/22; 6:50:40.) Similar language and circumstances are noncoercive. In *Commonwealth v. Gray*, the court told the jury "to give it some more time and a little discussion and see if you guys can reach a verdict in this matter." 479 S.W.3d 94, 98 (Ky. App. 2015). This statement was found to have no "indicia of coercion" but "merely encouraged

---

[6] Specifically, the trial court said:

> To return a verdict, each juror must agree to that verdict. Jurors must consult with one another to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment. Each juror must decide the case, but only after an impartial consideration of the evidence with the other jurors. In the course of deliberations, a juror should not hesitate to reexamine their views and change their opinion if convinced it is erroneous. No juror should surrender their honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors or for the mere purpose of reaching a verdict.

(VR: 7/19/22; 6:57:03.)

further deliberation." *Id.* Here, the trial court suggested that an additional thirty minutes of deliberation could be helpful to the jury. He encouraged more thoughtful debate that evening without precluding further deliberations the next day.

*Elders v. Commonwealth*, 395 S.W.3d 495 (Ky. App. 2012), further illustrates the propriety of the trial court's *Allen* charge and absence of coercion. In *Elders*, the judge did not make any statements about deciding on all counts that evening but told the jury they could find the defendant guilty of one count and acquit on another. 395 S.W.3d at 503-04. This was not demanding or hinting at the need for a verdict. *Id.* Similarly, the trial court informed the jury that they could "reach a conclusion on one count and not reach a conclusion on other counts." (VR 7/19/22; 6:58:45.) Like *Elders*, the trial court merely informed the jury of its options.

Given the totality of the circumstances, including the lack of intimidating language or action by the trial court and the lapse of time, we cannot conclude that the *Allen* charge was coercive. Thus, no palpable error substantially affecting Ortega's rights resulted in manifest injustice.

Next, Ortega contends that the jury's role was complete when the trial court ordered it to complete the verdict form for Count 1. Logically, the jury

-14-

completed its job by filling out a full verdict form. Again, this issue was unpreserved and will be reviewed for palpable error.

A jury completes its task only when it finishes deliberations, announces the result in open court, and no juror dissents when polled. The very nature of deliberations may change the views on counts previously considered. A judge's instruction to complete a verdict form does not lead to the end of the jury's role if the jury has not reached a unanimous verdict on all counts.

No case law supports Ortega's contention that the "role of the jury was finished" when the court directed the jury to complete the verdict form. Ortega argues that the jury was forbidden from deliberating further on counts two and three and "disobeyed" the court's instructions to complete the verdict form for count one. Neither statutory nor common law provides that juries cannot deliberate further once the trial judge asks for a verdict form.

At Ortega's request, the trial court wrote a note to the jury asking if it could complete Count 1 of the verdict form. (VR 7/19/22; 7:21:30.) The trial court did not instruct the jury that it was forbidden to continue to deliberate on the other counts or prohibited from returning all the verdict forms. Given the back-and-forth between the jury and the trial court that led to the *Allen* charge, it is reasonable that the jury believed it was its job to complete all the forms if it could

do so. It is reasonable that, given the intensity of their discussions as indicated by the foreperson, some consensus may have been reached in these final moments.

This case is distinguishable from *York v. Commonwealth*, 285 Ky. 492, 148 S.W.2d 337 (1941), the sole case Ortega cites to support his argument. In *York*, the jury was released into the public until the court became aware of a dissenting statement on the back of the instructions. *Id.* at 338. Nothing factually similar happened here, where deliberations were ongoing, and the jury had yet to submit any verdict forms to the court.

Ultimately, the jury's role was not complete when it returned to complete the verdict form, and it was permissible for the jury to continue deliberating. Thus, there was no error. The deliberations were ongoing as the jury worked to complete its duty of reaching a unanimous verdict. In doing so, the jury acquitted Ortega on Count 3. Ortega's rights were not substantially affected to the point where there was a manifest injustice. Therefore, the jury did not improperly continue deliberations.

Finally, Ortega requests this Court to reverse for cumulative error. Because no reversible error occurred, this argument fails. "Cumulative error is the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Mason v. Commonwealth*, 559 S.W.3d 337, 344 (Ky. 2018) (internal

-16-

quotation marks and citation omitted).  The Kentucky Supreme Court notes that "[w]here . . . none of the errors individually raised any real question of prejudice, [the Court has] declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice."  *Id*. at 345 (quoting *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010)).  The doctrine of cumulative error is inapplicable because each of the alleged errors failed, resulting in no prejudice, and their cumulative effect did not render Ortega's trial fundamentally unfair.

## CONCLUSION

Based on the foregoing analysis, we AFFIRM the judgment of the Jessamine Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David J. Guarnieri
Lexington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

Rachel A. Wright
Assistant Solicitor General
Frankfort, Kentucky